HURON VALLEY HOSPITAL, INC.,
Plaintiff-Appellant,

v.

CITY OF PONTIAC, et al.,
Defendants-Appellees.

No. 79–1265.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 17, 1980.

Decided Dec. 11, 1981.

Lawrence S. Jackier, Donald J. Gasiorek, Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackier, Southfield, Mich., Berrien C. Eaton, Gray, Plant, Mooty, Mooty & Bennett, Phoenix, Ariz., John P. Morris, Tempe, Ariz., for plaintiff-appellant.

Gilbert E. Gove, Larry J. Saylor, Miller, Canfield, Paddock & Stone, Detroit, Mich., Raymond X. Zweig, David Kaser, Southfield, Mich., Grady Avant, Jr., Long Preston, Kinnard & Avant, Charles Kinnaird, Detroit, Mich., Frank J. Kelley, Atty. Gen. of Mich., Robert A. Derengoski, Sol. Gen., Lansing, Mich., James K. Robinson, U. S. Atty., Detroit, Mich., Ronald R. Glancz, Al J. Daniel, Jr., U. S. Dept. of Justice, Appellate Staff, Civil Div., Washington, D. C., Walter Kron, Asst. Atty. Gen., Lansing, Mich., for defendants-appellees.

Before ENGEL, MERRITT and BROWN, Circuit Judges.

MERRITT, Circuit Judge.

Huron Valley Hospital, Inc., a new, non-profit corporation that wants to open a hospital, brings this action for damages and declaratory and injunctive relief against a competing hospital, several state and local health agencies and others claiming that they conspired in violation of the antitrust laws to prevent Huron Valley from building

its proposed, new, $20 million hospital in southeastern Michigan. The question before us on the merits concerns the extent to which the allocation of health services should be guided by a competitive market structure protected by the antitrust laws rather than a new, federal regulatory regime governing health care. The basic question is how narrowly we should construe the margin of regulatory authority in order to accommodate free market and antitrust considerations. We have before us the same kind of conflict the Supreme Court recently confronted in *National Gerimedical Hospital v. Blue Cross*, 452 U.S. 378, 101 S.Ct. 2415, 69 L.Ed.2d 89 (1981), except that in our case the conflict between the regulatory action and the Sherman Act is more direct.

Under the regulatory scheme created by the National Health Planning and Resource Development Act of 1974, 42 U.S.C. §§ 300k *et seq.* (1976), as amended in 1979 by Public Law No. 96–79, 93 Stat. 592, a hospital in a state which has adopted enabling legislation under the federal act can no longer make major capital expenditures without a certificate of need granted by a state licensing agency. Before acting on a request, the state agency must seek the views of another creature of the federal regulatory scheme, a federally funded, local health planning council, called a "health systems agency," or "HSA." Under the new federal health care scheme, health care "providers" (doctors, officials of hospitals and health insurance companies, etc.) must constitute between 40% and 49% of each local planning agency.

Neither the 1974 Act nor its legislative history discuss the relationship between the newly established regulatory regime and the antitrust laws. The legislative history does show concern that the role of providers should be "appropriately limited" to prevent complete capture of the administrative process. Senate Rep.No.1285, 93rd Cong., 2nd Sess. 46, 1974 U.S.Code Cong. & Ad. News, 7842, 7885. Although the 1979 amendments to the 1974 Act do not directly address the relationship between antitrust and regulation, several sections of the 1979 amendments take note of the general problem. The amendments favor "[s]trengthening ... competitive forces in the health services industry whenever competition ... advances the purposes of quality assurance, cost effectiveness and access." 42 U.S.C. § 300K–2(a)(17). See the discussion of the legislative history of the Act in *National Gerimedical Hospital v. Blue Cross*, 452 U.S. 378, 384–88, 101 S.Ct. 2415, 2419–21, 69 L.Ed.2d 89 (1981).

Michigan has adopted legislation implementing the federal regulatory scheme. In the present case, the state health agency for Michigan, upon the recommendation of the local health systems planning agency for the suburban area north of Detroit, refused to issue to Huron Valley a certificate of need for its proposed hospital, and instead issued a certificate of need allowing a competitor to rebuild its existing hospital. Huron Valley's claim here is that Pontiac General Hospital, the existing municipal hospital, and its allies have captured the administrative process. It alleges that in order to avoid competition Pontiac General has used its influence to bar Huron Valley from entering the market and in furtherance of the conspiracy has obtained for itself a license to rebuild its old hospital. The complaint alleges that a board member of Pontiac General as chairman of a key planning committee of the local health systems agency used his position to manipulate the administrative process so as to deny Huron Valley's construction permit and grant Pontiac General's permit.

In addition to this antitrust action, Huron Valley has pursued its administrative and judicial remedies in Michigan. The Michigan Court of Appeals recently reversed the decision of the state agency and has now required the state agency to grant Huron Valley's request to construct the proposed hospital. *Huron Valley Hospital, Inc. v. Michigan State Health Facilities Commission*, 110 Mich.App. 236, 312 N.W.2d 422 (1981). The State Attorney General advises us that he plans to seek review of this decision in the Michigan Supreme Court.

In a comprehensive opinion, reported at 466 F.Supp. 1301 (E.D.Mich.1979), the District Court held that Huron Valley lacked standing, had failed to exhaust administrative remedies, and is not entitled to adjudication of its antitrust claim at the present time because of ripeness and abstention doctrines. In the alternative, the District Court, on the merits, construed the new federal regulatory scheme as providing defendants with a broad exemption from antitrust liability. In another alternative holding, the District Court also concluded that two judicially created exceptions to the antitrust laws, the state action exemption of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and the *Noerr-Pennington* Doctrine, enunciated in *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), also insulate the defendants from antitrust liability.

The complaint alleges that Huron Valley has purchased a large tract of land and has taken other significant steps to develop a hospital. After alleging under the Sherman Act a conspiracy to restrain trade and monopolize hospital services in the area north of Detroit, the complaint states that the effect of the conspiracy has been to reduce the supply of hospital beds and services and maintain prices at an artificially high level. In a separate cause of action for declaratory and injunctive relief against the state agency and the United States Department of Health, Education and Welfare, the complaint alleges that these agencies have failed to take into account or require subordinate agencies to take into account competitive factors in the administration of the new federal act and that this failure violates the terms of the new Act, as well as the Sherman and Clayton Acts. Finally, a proposed amendment to the complaint brought a constitutional claim pursuant to 42 U.S.C. § 1983 against certain state and local health officials, who, it is claimed, deprived Huron Valley of constitutionally protected property and due process rights.

After filing this antitrust case, Huron Valley appealed the adverse administrative decision of the state agency to the Michigan State Health Facilities Commission in accordance with Michigan law. The Commission affirmed the state agency. Huron Valley then sought judicial review of the administrative decisions in the state circuit court pursuant to the state Administrative Procedures Act. The Circuit Court reversed the administrative decision and ordered the state to issue the certificate of need to Huron Valley. On October 7, 1981, the Michigan Court of Appeals in a detailed opinion, *Huron Valley, Inc. v. Michigan State Health Facilities Commission*, 110 Mich.App. 236, 312 N.W.2d 422 (1981), affirmed the Circuit Court. The Appeals Court held that the standards and procedures employed by the state agency in this case violate due process and the state enabling act which created the state agency and established criteria for its conduct.

We conclude that the District Court erred on the standing issue and in its conclusion that the federal regulatory scheme enacts a blanket exemption from liability under the antitrust law, but was basically correct in its determination that the prior resort doctrines of ripeness, primary jurisdiction and exhaustion of state administrative remedies combined to prevent adjudication of the antitrust claim at the present time. We, therefore, vacate the order of the District Court and remand the action for entry of an order staying further proceedings in the antitrust case until ongoing state administrative and judicial proceedings are complete. Until the Michigan state process is complete and the factual context of the case settled at the administrative level, we are not in position to determine intelligently where the margin between the federal health regulatory scheme and the antitrust laws lies in this case.

## I. STANDING

The District Court held that Huron Valley did not satisfy the statutory prerequisite of injury to "business or property," § 4 Clayton Act, 15 U.S.C. § 15 (1976), because

it had not yet entered the hospital business and because any property interest was extinguished by the denial of its application by the state agency. 466 F.Supp. at 1310–11.

■ Although a person must have a business or property injury to bring an antitrust action, it is not required that he be engaged in an ongoing business; antitrust injury can be suffered by a nascent business enterprise as well. The antitrust laws protect the serious potential competitor as well as the established business. Otherwise, "competition could be frustrated with impunity by established companies through the simple expedient of picking off and eliminating potential competition before it could reach the certification stage.... [T]his would be at variance with the spirit and intent of the antitrust laws...." *Utah Gas Pipelines Corp. v. El Paso National Gas Co.*, 233 F.Supp. 955, 964 (D.Utah 1964).

The District Court quoted from our opinion in *Volasco Products Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383 (6th Cir. 1962), cert. denied, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963), in support for its conclusion that Huron Valley lacked standing, 466 F.Supp. 1311. *Volasco*, however, is inapposite. As we said in *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1150 (6th Cir. 1975), "*Volasco* is not a delineation of this Court's view of the doctrine of standing in antitrust suits. Simply put, the Court in that case was not concerned with [the plaintiff's] standing but with its showing of [the] directness [of the injury, i.e. causation] on the merits." In *Volasco* the issue was whether a potential competitor was entitled to damages, not whether he had standing to bring suit. The Court merely held that in order for a potential competitor to sustain a claim for damages he must prove "preparedness and capacity to engage in a business" and not merely the "stated intention" to do so. 308 F.Supp. at 395. *Volasco*, therefore, dealt with the merits of the plaintiff's claim for damages, not his standing to bring suit. A plaintiff may, as in *Volasco*, have standing to bring an unmeritorious claim.

■ The test for determining whether a potential competitor has a business interest protected by the antitrust laws is whether he has both the *intention* and *preparedness* to compete. *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 994 (D.C.Cir.1977), cert. denied, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978). Courts must attempt to distinguish the serious potential competitor who has been illegally kept out of the market from the inchoate business enterprise with a mere hope of entry. Among the factors which courts have considered are the plaintiff's background and experience in the prospective business, financial ability to enter the business, substantial affirmative action toward entry, and the consummation of contracts in preparation for entry. *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 994 (D.C. Cir.1977), cert. denied, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978); *Martin v. Phillips Petroleum Co.*, 365 F.2d 629, 633–34 (5th Cir.), cert. denied, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966); *Laurie Visual Etudes v. Chesebrough-Pond's, Inc.*, 473 F.Supp. 951, 955–56 (S.D.N.Y.1979); Areeda & Turner, 2 Anti-Trust Law, § 335c at 174 (1978).

■ Under this standard, the complaint and affidavits submitted by Huron Valley are sufficient to establish standing. It has acquired a 31 acre site for the hospital, engaged in feasibility studies, attempted to obtain a certificate of need and appealed its denial, entered into management contracts and secured commitments for both medical and nursing staff. These facts are sufficient to establish a legitimate business interest and the District Court should not have dismissed the suit on the theory that Huron Valley lacked standing.

## II. IMPLIED REPEAL OF ANTITRUST LAWS

■ The District Court also erred in broadly holding that the National Health Planning Act effects an implied repeal of the antitrust laws' control of the hospital marketplace. The Supreme Court recently rejected that position in the *Blue Cross* case, *supra*. In that case, Blue Cross had

refused to deal with any hospital not licensed by the appropriate state agency under the new federal regulatory scheme. Like the District Court here, the District Court and the Eighth Circuit in *Blue Cross* held broadly that the federal act provides a "blanket" exemption from antitrust liability. The Supreme Court reversed stating that "there is no direct conflict" between the new Act and the Sherman Act "with respect to the conduct at issue here" and holding "that the NHPRDA of 1974 is not so incompatible with antitrust concerns as to create a 'pervasive' repeal of the antitrust laws as applied to every action taken in response to the health-care planning process." 101 S.Ct. at 2423–24. After holding that the antitrust laws apply to Blue Cross's refusal to deal, the Supreme Court issued the following reservation in footnote 18 of the opinion:

> Nevertheless, because Congress has remained convinced that competition does not operate effectively in some parts of the health care industry . . . we emphasize that our holding does not foreclose future claims of antitrust immunity in other ·factual contexts. Although favoring a reversal in this case, the United States as amicus curiae asserts that "there are some activities that must, by implication, be immune from antitrust attack if HSA's and State Agencies are to exercise their authorized powers" . . . . Where, for example, an HSA has expressly advocated a form of cost-saving cooperation among providers, it *may be* that antitrust immunity is "necessary to make the [NHPRDA] work"

101 S.Ct. at 2423. We, therefore, find that consideration of Huron Valley's antitrust allegations is not precluded by the health statutes.

### III.  PRIOR RESORT DOCTRINES

▮   Although the District Court erred on the standing and implied repeal issues, we believe the District Court was basically correct in concluding that a combination of prior resort doctrines of administrative law —exhaustion, ripeness and primary jurisdiction—prevent the adjudication of Huron

Valley's antitrust claim at the present time. Huron Valley has now obtained from the Michigan Court of Appeals, subject to further review by the Michigan Supreme Court, the basic injunctive relief that it seeks from the federal antitrust court. Unless the Michigan Supreme Court reverses, Huron Valley will be able to build its proposed hospital. ˙ On the damages question (assuming hypothetically that the defendants are not protected from antitrust liability by any of the immunities they assert), a federal antitrust court will not be able to assess the nature and extent of defendant's liability until the state administrative and judicial process is complete. At the present time damages are uncertain and speculative; and it is unclear· what, if any, marginal antitrust relief is appropriate to redress the injury. We cannot determine until after the state proceedings are completed the nature and extent of the injury. Moreover, the state corrective processes contemplated by the new federal and state health regulatory legislation appear to be working, and prudential considerations lead us to the conclusion that we should not now attempt to determine before the state process is complete whether any harm subject to antitrust protection has occurred.

Our decision to await exhaustion is not prompted merely by the difficulty of the antitrust immunity questions presented, although they are substantial, *see* Miller *Antitrust and Certificate of Need: Health Systems Agencies, the Planning Act, and Regulatory Capture,* 68 Georgetown L.J. 873 (1980); Blumstein & Sloan, *Redefining Government's Role in Health Care: Is a Dose of Competition What the Doctor Should Order,* 34 Vand.L.Rev. 849 (1981); or the fact that the parties may well resolve their differences during the course or upon the completion of the state proceedings. Although these factors give us pause, the main reason for deferral, as the District Court stated, is the policy expressed by the Supreme Court in *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), an antitrust case alleging a conspiracy by the Chicago Mercantile

Exchange and others to deny a commodities broker membership and trading privileges on the Exchange. In *Ricci*, the court defined the problem as follows:

> The problem to which the court of appeals addressed itself is recurring. It arises when conduct seemingly within the reach of the antitrust laws is also at least arguably protected or prohibited by another regulatory statute enacted by Congress. Often, but not always, the other regime includes an administrative agency with authority to enforce the major provisions of the statute in accordance with the statute's distinctive standards, which may or may not include concern for competitive considerations.

409 U.S. at 299–300, 93 S.Ct. at 579.

The court concluded that a federal antitrust court presented with this problem should stay its hand pending the final outcome of the administrative proceeding when the following three elements are present:

1. When it "will be essential for the antitrust court to determine whether ... any of the provisions" of the federal regulatory statute "are incompatible with the maintenance of an antitrust action."

2. When "some facets of the dispute ... are within the statutory jurisdiction" of the administrative agency.

3. When "the adjudication of that dispute" by the agency "promises to be a material aid in resolving the immunity question."

409 U.S. at 302, 93 S.Ct. at 580.

It is clear that the first two elements of this standard are present in the instant case. We also believe that the state proceedings will be of material aid in resolving the immunity issue, as well as in determining the nature and extent of the antitrust injury, assuming *arguendo* that the defendants do not have total antitrust immunity. In the process of approving Pontiac General's application instead of Huron Valley's, the state agency adopted an express policy favoring existing hospitals over new entrants. Such a policy means that existing providers almost always win when their interests conflict with potential suppliers. The Michigan Court of Appeals has now held this policy invalid. Its reasoning appears to include as a consideration the fact that the State Agency overlooked competitive factors that should have been considered under the regulatory scheme.

Federal courts attempting to draw the appropriate line between the regulatory scheme and the antitrust laws will be materially aided by a state determination concerning the validity of this rule favoring existing providers and the extent to which the administrative process must take into account competitive factors and attempt inside the process to reconcile cost containment through regulation with the ideal of efficiency based on competition in the marketplace.

There may be other simpler, more effective and less confusing techniques than the antitrust laws for preventing or controlling the capture of public health care agencies by existing providers. Where a decision of a captured agency directly conflicts with the antitrust laws, as Huron Valley alleges to be the case here, courts—rather than following a policy of partial or marginal judicial deregulation through enforcement of the antitrust laws—may also be called upon to consider as a solution expanded interest representation, imposition of more definite substantive standards on the agencies in order to insure more adequate consideration of competitive standards and imposition of requirements that the agencies consider less restrictive alternatives than outright denial of certificates of need or that the agencies themselves adopt rules that narrow their discretion and prevent capture. See Davis, Administrative Law Treatise § 2.00–5 (1958); Stewart, *The Reformation of American Administrative Law*, 88 Harv.L.Rev. 1669 (1975). This appears to be the direction in which the Michigan courts are moving. We, therefore, conclude that it is appropriate to await the completion of the state proceedings before attempting to establish the borderline between the antitrust laws and the new regulatory scheme in this case.

Accordingly, the judgment of the District Court is vacated and the case remanded for further proceedings, including the issuance of a stay, in accordance with this opinion.