887 F.2d 710
 HURON VALLEY HOSPITAL, INC. and Martin L. Trepel, D.O.,
Plaintiffs-Appellants,
v.
CITY OF PONTIAC, Defendant,
Bailus Walker, Jr.; Maurice S. Reizen, M.D.; Herman A.
Ziel, M.D.; Richard Reihmer, Defendants-Appellees.
 No. 88-1702.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 17, 1989.
Decided Oct. 13, 1989.
 
 Dennis J. Dlugokinski, Berkley, Mich., Ann C. Yahner, Jerry S. Cohen, Cohen, Milstein & Hausfeld, Washington, D.C., and John P. Morris (argued), Coronado, Cal., for plaintiffs-appellants.
 Barbara H. Erard, Kenneth J. McIntyre (argued), Claudia Rast, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendants-appellees.
 Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 This longstanding controversy began in 1975 when Huron Valley Hospital, Inc. (Huron) was organized as a non-profit Michigan corporation for the purpose of constructing, owning, and operating a hospital in Oakland County, Michigan.[1] The district court has stated in its most recent decision, Huron Valley Hospital, Inc. v. City of Pontiac, 686 F.Supp. 608, 609 (E.D.Mich.1988), "[w]ith this opinion, the saga of the Huron Valley Hospital comes to an end".[2]
 
 
 2
 In 1976, Huron filed an application for a State certificate of need (CON) under M.C.L. Secs. 331.451 et seq., now repealed and replaced by Secs. 333.22101 et seq., effective September 30, 1978. Huron also filed, as it was required to do, for federal capital expenditure approval under Sec. 1122 of the Social Security Amendments of 1972, 42 U.S.C. Sec. 1320(a)(1), with the Michigan Department of Public Health and the federally designated regional health systems agency. A Department of Public Health official had been designated by the Governor of Michigan to administer the federal Sec. 1122 program under an agreement between Michigan and the Secretary of the United States Department of Health and Human Services.[3] Both applications sought permission to proceed with the construction of a 153-bed acute care hospital in Oakland County costing nearly $15 million. The applications were completed in February 1977.
 
 
 3
 The Michigan Department of Public Health denied Huron's CON application. Huron then requested and received a hearing before the Michigan State Health Facilities Commission seeking a reversal and approval of the CON. The Commission, however, affirmed the denial. In the meantime, Pontiac General Hospital (PGH), an existing facility, filed a notice of intent to request a CON to upgrade its existing facility in Oakland County. This application of PGH was approved on August 25, 1978.
 
 
 4
 Having unsuccessfully exhausted all the Michigan administrative avenues, Huron filed suit in a Michigan state court which reversed the Commission in 1981, ordering the Health Department to issue a CON to Huron. The Michigan Court of Appeals affirmed the state trial court's findings, holding that the Department of Public Health had based its decision upon unpublished criteria that favored the application of Pontiac General, in violation of the statutory limitations on the Department's discretion.[4] Huron was held to be deprived of an impartial review of its application in violation of its due process rights. The Michigan court ordered the issuance of the CON because the Department's decision was "unsupported by competent, material, and substantial evidence."[5]
 
 
 5
 Following the Michigan Supreme Court's denial of the Commission's application for leave to appeal,[6] the Department of Public Health issued a CON to Huron limiting its authorized capital expenditure to $14,789,000.00, the amount requested in the 1976 application. Huron next filed a petition for clarification in state court, which ordered the Department to issue a CON in a reasonable amount which would allow construction of the planned facility.[7] The Department finally issued a CON to Huron in 1982 for over $44 million.
 
 
 6
 During 1981 and 1982 Huron discussed the federal Sec. 1122 approval, and in 1983 the regional health administrator issued a Sec. 1122 approval after the Michigan Department of Public Health finally recommended approval. Shortly thereafter, however, an Assistant United States Surgeon General vacated the Sec. 1122 approval. More litigation followed in the United States District Court, which ordered that the Sec. 1122 approval be reinstated. Construction finally began on the hospital in 1984.
 
 
 7
 In addition to the litigation regarding the CON, Huron instituted this action in 1978 in the federal court claiming that numerous defendants conspired to violate the anti-trust laws by preventing Huron from entering the Oakland County health care market. In 1979, Huron sought to amend its original complaint to add 42 U.S.C. Sec. 1983 violations and to add the state defendants now before us. The district court refused to allow the amendment and subsequently granted summary judgment in favor of the various defendants. On appeal, a panel of this court vacated the district court's judgment and remanded the case for entry of a stay pending the completion of the state administrative and judicial proceedings.[8] State proceedings were completed in 1982, affirming that a CON be issued to Huron.
 
 
 8
 Huron filed an amended complaint in 1983, adding as defendants Bailus Walker, Jr., Maurice S. Reizen, Herman A. Ziel, and Richard Reihmer. Huron claims that beginning in 1976, these defendants engaged in a general conspiracy to restrain trade in violation of Sec. 1 of the Sherman Act and that certain defendants conspired to deprive Huron of its fourteenth amendment due process rights in violation of 42 U.S.C. Sec. 1983.
 
 
 9
 The defendants sought dismissal or, in the alternative, summary judgment on various grounds. The district court decided that defendants could claim neither qualified immunity nor a state action anti-trust exemption.[9] On appeal, another panel of this court affirmed that the defendants could not claim qualified immunity because they should have known that rules and regulations of a state agency needed to be subjected to advance notice and comment.[10] That panel held, moreover, that there was no jurisdiction to review the appeal of the state action anti-trust exemption.
 
 
 10
 On a subsequent motion for summary judgment by defendants, the district court dismissed all of the conspiracy claims on the basis that a jury could not reasonably find a conspiracy between the private defendant and the state officials to deprive plaintiff of a property interest without due process of law.[11] Still another panel of this court affirmed.[12] (By this time eight different judges of this court had participated in decisions involving plaintiffs' claims).
 
 
 11
 The remaining procedural due process violation claim under Sec. 1983 against the four former Health Department officials was remanded for disposition. Defendant Reizen was director from 1970 to 1981; Walker from 1981 to 1983. Defendant Ziel was chief of the bureau of health care facilities from 1966 to 1984 within the Health Department. Defendant Reihmer, a lower level official, was chief of health facilities planning and construction from 1969 to 1978. Huron's application for a CON was first reviewed and analyzed by Reihmer, then worked its way up through Ziel's bureau, and finally was reviewed by the director in respect to issuance of a CON.
 
 
 12
 This present appeal (before the ninth and tenth judges of this court to consider this controversy) involves the district court's grant of defendants' motion for summary judgment dismissing the Sec. 1983 claims. The district court held that plaintiffs were required to show that the state post-deprivation proceedings did not provide an adequate remedy to them. Because the plaintiffs failed to plead and prove the inadequacy of state remedies to redress plaintiffs' injuries caused by defendants' alleged failure to afford plaintiffs due process of law, and because state remedies were adequate and available in the case, Judge Gilmore held that plaintiffs' remaining claim or claims were not actionable under Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Plaintiffs, once again, have appealed and we begin by setting out the underlying statute:
 
 
 13
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or another person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
 
 
 14
 42 U.S.C. Sec. 1983.
 
 
 15
 Section 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" that occur under color of state law. The statute is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law. See Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (dealing with state tort law). Section 1983 also does not cover state constitutional violations that are not also federal constitutional deprivations.
 
 
 16
 Plaintiffs present a somewhat novel Sec. 1983 claim. They contend that because the defendant state officials failed to abide by the Michigan statutory requirements for evaluating an application for a CON, they were deprived of property in violation of due process under federal constitutional standards and requirements. The complaint is ambiguous as to whether the plaintiffs claim they were deprived of their right to issuance of the CON, their right to the evaluation of their application for the CON according to Michigan law, or whether they claim defendants unconstitutionally deprived them of the money lost due to the delay in their application which was a result of defendants' failure to comply with state law.
 
 
 17
 The Michigan court concluded that the plaintiffs were "deprived of an impartial review." Huron Valley Hospital v. Michigan State Health Facilities Comm'n, 110 Mich.App. 236, 312 N.W.2d 422, 425 (1981).[13] Plaintiffs contend that they had a protected interest in having their applications for a CON and for a capital expenditure approval evaluated according to the specifications contained in the Michigan statutes themselves. Defendants assert that this claim is one based on a lack of procedural due process, and thus is subject to the holding of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).
 
 
 18
 The district court cited Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), which observed that Parratt "concluded that although petitioner [Parratt] had been 'deprived' of property within the meaning of the Due Process clause ..., the State's post-deprivation tort remedy provided the process that was due." 474 U.S. at 328, 106 S.Ct. at 663. Daniels summed up its holding in the following sweeping statement:
 
 
 19
 We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.
 
 
 20
 474 U.S. at 328, 106 S.Ct. at 663 (emphasis in original).
 
 
 21
 Next the district court described the issue to be whether or not the wrongs alleged on the part of defendants "were the result of established state procedures," noting further the elimination of all conspiracy allegations. If the wrongs were attributable to "established state procedure", then he concluded that Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), would apply. Logan held that a challenge based upon violation of an established state procedure, rather than a mere random negligent act by a state official, which "destroys his entitlement without according him proper procedural safeguards" is entitled to due process protection, but the action must be the action of "the state system itself ... whether ... taken through negligence, maliciousness, or otherwise." 455 U.S. at 436, 102 S.Ct. at 1158.
 
 
 22
 The district court held that the Parratt "adequate state remedy doctrine" governed in this case, because plaintiffs were not, in actuality, challenging conduct under established state procedures," citing this language from Hudson v. Palmer, 468 U.S. 517, 532-33, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984):
 
 
 23
 ... we affirmed our holding in Parratt in Logan v. Zimmerman Brush Co., 455 U.S. 422 [102 S.Ct. 1148, 71 L.Ed.2d 265] (1982), in the course of holding that post-deprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action.
 
 
 24
 The Michigan Court of Appeals held that in plaintiff Hospital's suit against the Michigan State Health Facilities Commission, the Michigan Department of Public Health, through "use of unpromulgated criteria and the Commission's affirmance of the use of the criteria in evaluating the issuance of certificates of need is in violation of the statutory procedural limitations in applying their discretion ... [h]ence, the denial of the certificate of need was invalid." 312 N.W.2d at 425 (emphasis added). The Michigan court added: "However, the Commission while recognizing the disparate treatment given the two applications, [Huron's and Pontiac General's] also found that it did not rise to a denial of due process or equal protection of the law.... We disagree." 312 N.W.2d at 426 (emphasis added).
 
 
 25
 It is unclear whether the Michigan court was basing its decision on a denial of due process or of equal protection, but its discussion emphasized the disparity and distinction between treatment of Huron's application and that of Pontiac General's. We do not construe it, although it is a question not free of doubt, as res adjudicata or binding upon us in our consideration of plaintiffs' claims under Sec. 1983 of violation of their claimed property rights by denial of due process.
 
 
 26
 We ventured into this murky area of the law in somewhat similar circumstances in National Communication Systems v. Michigan Public Service Commission, 789 F.2d 370 (6th Cir.), cert. denied, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Plaintiffs there claimed, as in this case, intentional delay in action upon their application for administrative approval and malicious abuse of the regulatory process, and proceeded against the Michigan state agency and its individual commissioners. The suit also was filed under Sec. 1983, claiming deprivation of property without due process.
 
 
 27
 National Communication was based upon intentional and even malicious action on the part of the state commission and the individual officials in hindering and/or delaying plaintiff in obtaining an approval loan to finance improvements. After ruling that the eleventh amendment barred a monetary recovery against the Michigan Public Service Commission and the commissioners in their official capacities, this court held that a suit against the commissioners in their individual capacities was also precluded under Parratt and Vicory v. Walton, 721 F.2d 1062 (6th Cir.1983), cert. denied, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). It was necessary to discuss whether defendants would be entitled to immunity under Michigan law in that case. We held that this was a question as to whether defendant officials acted in good faith, citing Ross v. Consumers Power Co., 420 Mich. 567, 363 N.W.2d 641 (1984), and that plaintiff had an adequate remedy under state law "to redress the wrongs" despite the fact that state procedures would not afford "the same relief potentially available" under Sec. 1983. National Communication, 789 F.2d at 373.
 
 
 28
 In Vinson v. Campbell County Fiscal Court, 820 F.2d 194 (6th Cir.1987), we held that to constitute a substantive due process violation, in contrast to a procedural due process violation, there must be "an egregious abuse of governmental power." Id. at 198. A procedural due process claim is analyzed under Parratt. Vinson, 820 F.2d at 198; Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir.1985) (en banc). In Vinson, we distinguished a state practice policy, or custom, as discussed in Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), from "established state procedure," which we have been considering in this controversy. Vinson, 820 F.2d at 199. The latter is described in Vinson as "the mechanism that effects a deprivation or contributes to cause a deprivation." Id. at 199 (quoting Rittenhouse v. DeKalb County, 764 F.2d 1451, 1456, n. 5 (11th Cir.1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986)); see also Kumar v. Marion County Common Pleas Court, 704 F.2d 908, 910 (6th Cir.1983) (holding that an alleged injury sought to be redressed under Sec. 1983 was properly dismissed in federal court if the "result of the unauthorized failure of certain state agents to follow established state law").
 
 
 29
 To the extent plaintiffs claimed that defendants negligently failed to follow established state procedures and law to give their operation fair and equal consideration with that of PGH, Daniels would control and it was appropriate to relegate plaintiffs to a remedy under state law. To the extent defendants' alleged actions were intentional, we find no error in the conclusion of the district court that such actions were random and unauthorized and not taken pursuant to "established state procedures." On that basis under Hudson, the Parratt principles would still apply and the district court's decision would not be erroneous. Defendants' alleged use of criteria in evaluation not contained in Michigan law and regulations was a departure from, not an action based upon, "established state procedures." See Easter House v. Felder, 879 F.2d 1458 (7th Cir.1989) (corrected Aug. 4, 1989) (en banc); see also, id. (Easterbrook, J., concurring). The alleged actions, furthermore, were not egregiously abusive.
 
 
 30
 It has been demonstrated that pursuit of their claimed rights in Michigan state courts has vindicated plaintiffs' claim that their application should be granted. It shows that Michigan law and established procedures, if properly followed, would have borne out plaintiffs' state claim that they should have approval to construct a new hospital.[14] See Vinson, 820 F.2d at 199 (" 'state action is not necessarily complete until the termination of the state's postdeprivation remedy' "), see also Sproul v. City of Wooster, 840 F.2d 1267, 1270 (6th Cir.1988); Schaper v. City of Huntsville, 813 F.2d 709 (5th Cir.1987). The fact that the state remedy, if adequate to redress the grievance or claim, would provide less relief or benefit than Sec. 1983 might provide avails plaintiff no basis for complaint. Parratt, 451 U.S. at 544, 101 S.Ct. at 1917; National Communication Systems, 789 F.2d at 373; Wilson, 770 F.2d at 583, 584-85; Lake Nacimiento Ranch Co. v. San Luis Obispo, 841 F.2d 872 (9th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988).
 
 
 31
 We are satisfied that the district judge, experienced in matters of Michigan law, has set out a number of bases for indicating that plaintiffs indeed do have adequate remedies available under state law; in any event, it is up to plaintiffs to demonstrate that there are no state remedies available. Sproul, 840 F.2d at 1270; Campbell v. Shearer, 732 F.2d 531, 533-34 (6th Cir.1984); Vicory, 721 F.2d at 1065-66. They have failed to do so.
 
 
 32
 Accordingly, we AFFIRM the decision of the district court to grant defendants summary judgment.
 
 
 
 [1]
 Huron was formed by Dr. Trepel, who brought into being West Oakland, a for-profit corporation, to sell medical services to Huron. Dr. Trepel sold Huron to Harper-Grace Hospital in a no-cash sale. He also sold West Oakland to Harper-Grace for $9.7 million. The district court added Dr. Trepel as a party plaintiff when it discovered that Harper-Grace assigned the proceeds from the lawsuit to Dr. Trepel
 
 
 [2]
 This case has captured much space in both the Federal and State Reporters. See Huron Valley Hospital, Inc. v. City of Pontiac, 466 F.Supp. 1301 (E.D.Mich.1979), vacated, 666 F.2d 1029 (6th Cir.1981), later proceeding, 585 F.Supp. 1159 (E.D.Mich.1984), later proceeding, 612 F.Supp. 654 (E.D.Mich.1985), aff'd, 792 F.2d 563 (6th Cir.), cert. denied sub nom. Walker v. Huron Valley Hospital, Inc., 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986), later proceeding, 650 F.Supp. 1325 (E.D.Mich.1986), aff'd, 849 F.2d 262 (6th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 367, 102 L.Ed.2d 357 (1988), later proceeding, 686 F.Supp. 608 (E.D.Mich.1988). See also Huron Valley Hospital, Inc. v. Michigan State Health Facilities Comm'n, 110 Mich.App. 236, 312 N.W.2d 422 (1981)
 
 
 [3]
 The CON program and the Sec. 1122 program were created to eliminate unnecessary medical costs. The CON program was designed to insure that new hospitals were not built and existing hospitals did not expand in areas where such facilities were not needed
 
 
 [4]
 Huron Valley Hospital, Inc. v. Michigan State Health Facilities Comm'n, 110 Mich.App. 236, 312 N.W.2d 422 (1981)
 
 
 [5]
 Id., 110 Mich.App. at 251, 312 N.W.2d at 428
 
 
 [6]
 413 Mich. 853 (1982)
 
 
 [7]
 Huron Valley Hospital, Inc. v. Michigan State Health Facilities Comm'n, Civ. action No. 80-200439-AA (Oakland County Civ.Ct., Oct. 21, 1982)
 
 
 [8]
 Huron Valley Hospital, Inc. v. City of Pontiac, 666 F.2d 1029 (6th Cir.1981)
 
 
 [9]
 Huron Valley Hospital, Inc. v. City of Pontiac, 612 F.Supp. 654 (E.D.Mich.1985)
 
 
 [10]
 Huron Valley Hospital, Inc. v. City of Pontiac, 792 F.2d 563, 569 (6th Cir.1986)
 
 
 [11]
 Huron Valley Hospital, Inc. v. City of Pontiac, 650 F.Supp. 1325, 1346 (E.D.Mich.1986)
 
 
 [12]
 Huron Valley Hospital, Inc. v. City of Pontiac, 849 F.2d 262 (6th Cir.) (per curiam), cert. denied, --- U.S. ----, 109 S.Ct. 367, 102 L.Ed.2d 357 (1988)
 
 
 [13]
 This Michigan opinion is the basis of plaintiffs' claim for judgment. The district court concluded that defendants' motion regarding adequate state remedies was jurisdictional, and if granted would require dismissal. Plaintiffs' motion for summary judgment maintained that the state court holding precluded relitigation of their due process claims
 
 
 [14]
 We find it unnecessary to consider whether at the time plaintiffs filed their application seeking discretionary action on the part of defendants and the Michigan Department of Public Health they had a "legitimate claim of entitlement" or merely a "hope or expectation of some benefit." See Sullivan v. Town of Salem, 805 F.2d 81, 84, 85 (2d Cir.1986). See also Schaper v. City of Huntsville, 813 F.2d 709, 713 (5th Cir.1987). If the latter, plaintiffs may not have had the requisite property interest which they assert was taken without due process