885 F.2d 317
 1989-2 Trade Cases 68,754
 Robert Steven BUBIS, Plaintiff-Appellant,
v.
Leonard Ray BLANTON; James M. Allen, Defendants-Appellees,
S.J. King; Clyde Edward Hood, Jr.; Robert O. Frensley;
Jack Ham; James B. Ham; Robert E. Townes;
Charles S. Rolling, Defendants.
 No. 88-5805.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 25, 1989.
Decided Sept. 14, 1989.
Rehearing and Rehearing En Banc Denied Nov. 28, 1989.
 
 Richard J. Braun (argued), Richard J. Braun & Associates, Nashville, Tenn., for plaintiff-appellant.
 R. Jan Jennings, Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., John S. McLellan, Jr. (argued), Kingsport, Tenn., Tyree B. Harris, Harris & Harris, Katherine A. Brown (argued), Baker, Worthington, Crossley, Stansberry & Woof, Nashville, Tenn., for defendants-appellees.
 Before WELLFORD and RYAN, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Plaintiff Robert S. Bubis appeals from the order of the district court dismissing his complaint alleging that defendants Leonard Ray Blanton and James Allen[1] violated section one of the Sherman Act, 15 U.S.C. Sec. 1, and section four of the Clayton Act, 15 U.S.C. Sec. 15.[2] The district court, finding that Bubis did not have standing to make a claim under section 4 of the act, dismissed the claim. We affirm.
 
 I.[3]
 
 2
 This case derives from the conspiracy by former Tennessee governor Blanton and several of his aides and associates to manipulate the issuance of liquor licenses.
 
 
 3
 On May 27, 1983, appellant filed his complaint alleging that as a result of appellees' unlawful conduct, he was damaged in his business and property.[4] The specific action which allegedly damaged appellant was the denial of a transfer of a liquor license issued for Red & White Liquor Store (R & W) by the Tennessee Alcoholic Beverage Commission (ABC).
 
 
 4
 The facts relevant to the denial of the transfer of the R & W license are as follows. On March 15, 1977, Shirley Wise contracted to purchase R & W from Bette Anne Cole. Wise also entered into an agreement to lease the premises at 501 8th Avenue South on that day. On March 21, 1977, Wise individually applied for a license to sell alcoholic beverages at the 8th Avenue location. On the application she stated that no other person had any interest in R & W. She also filled out a questionnaire to the ABC in which she stated that she would run R & W as a sole proprietorship. On April 1, 1977, the ABC issued a license for R & W in Wise's name only. On April 20, 1977, appellant and Wise filed a joint application for transfer of the license to 5701 Nolensville Road. Appellant held an option on the Nolensville Road property. They also filled out a joint questionnaire stating that they intended to operate R & W as a partnership. On July 12, 1977, the ABC denied the application for transfer to the Nolensville Road location. Finally, appellant and Wise's husband testified that appellant had a partnership interest in R & W.
 
 
 5
 The case was tried to the court from August 17, 1987 to August 21, 1987. On June 27, 1988, 704 F.Supp. 1491, the court issued a memorandum opinion dismissing appellant's antitrust claim on the basis of lack of standing. The district court made alternative findings. Initially, it found that since appellant held no interest in the R & W license he had no interest which could have been transferred. The court also found that pursuant to Tennessee law any interest appellant had in R & W was illegal due to the failure to disclose the interest in the license application.
 
 
 6
 Appellant argues that the district court erred in requiring appellant to be a co-licensee to have standing, in finding his co-ownership in R & W to be illegal, and in failing to find standing based on his status as a potential competitor.II.
 
 
 7
 Appellees do not contest the district court's finding that they conspired to restrain trade in violation of section 1 of the Sherman Act. Therefore, the sole issue before this court is whether appellant had standing under the Clayton Act, i.e., whether appellant had a legitimate business or property interest that was injured by reason of the unlawful conspiracy.
 
 
 8
 The district court ruled that appellant had no standing because (a) he had no interest in the R & W license, and (b) any ownership interest he had in R & W was illegal.[5]
 
 
 9
 Appellant concedes that he had no interest in the license. He argues, however, that he has standing as a potential competitor or because he had an interest in R & W which was injured by the denial of the transfer of the license.
 
 
 10
 For his potential competitor argument, appellant relies on the principles articulated by this court in Huron Valley Hospital, Inc. v. City of Pontiac, 666 F.2d 1029 (6th Cir.1981).
 
 
 11
 The test for determining whether a potential competitor has a business interest protected by the antitrust laws is whether he had both the intention and preparedness to compete. Courts must attempt to distinguish the serious potential competitor who has been illegally kept out of the market from the inchoate business enterprise with a mere hope of entry. Among the factors which courts have considered are the plaintiff's background and experience in the prospective business, financial ability to enter the business, substantial affirmative action toward entry, and the consummation of contracts in preparation for entry.
 
 
 12
 Id. at 1033 (citations omitted).
 
 
 13
 In Huron Valley, the plaintiffs, who were attempting to build a hospital, were denied a certificate of need by a state agency. The plaintiff brought suit under the Clayton Act. The district court dismissed the antitrust claim on the basis of lack of standing. This court reversed. Applying the above standards, this court determined that the facts that the plaintiff had acquired a thirty-one acre site for a hospital, engaged in feasibility studies, attempted to obtain a certificate of need, entered into management contracts and secured commitments for staff were sufficient to establish a legitimate business interest for standing purposes. Id. See also Fine v. Barry & Enright Prod., 731 F.2d 1394 (9th Cir.) (student who applied to appear on six game shows and who appeared on three game shows had standing to bring antitrust suit), cert. denied, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); Hecht v. Pro-Football, Inc., 570 F.2d 982, 987 (D.C.Cir.1977) (a manifestation of intention to enter business and a demonstrated preparedness to do so is sufficient to establish standing), cert. denied, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978).
 
 
 14
 Appellees admit that the Huron Valley standards are appropriate for determining the standing of a potential competitor. They argue, however, that this is not a potential competitor case, but rather a case of whether an individual who does not have a legitimate business interest has standing. We agree.
 
 
 15
 A review of the evidence indicates that appellant did not have a nascent business interest. Rather, the evidence indicates that appellant had an existing interest in R & W and was a competitor in the liquor sales market. Bubis testified that he sold his interest in late 1977 or early 1978 because R & W was unprofitable. Accordingly, we believe this case turns on the issue of whether appellant had a legitimate business interest which was injured by appellees' unlawful acts.
 
 
 16
 The district court held that appellant did not have standing because his interest in R & W was illegal. The court and appellees rely on Tennessee Code Section 57-3-210(f) which reads in relevant part as follows:
 
 
 17
 (f) It shall be unlawful for any person to have ownership in, or participate, either directly or indirectly, in the profits of any wholesale or retail business licensed under this chapter, unless his interest in said business and the nature, extent and character thereof shall appear on the application; or if the interest is acquired after the issuance of a license, unless it shall be fully disclosed to the commission and approved by it.
 
 
 18
 Under this statute, appellant's interest in R & W at the time of the attempted transfer of the liquor license was unlawful, since his interest was not disclosed on the application completed by Shirley Wise. The district court found that appellant's interest was not disclosed to the ABC at the time of the application, nor was it disclosed to and approved by the ABC after the issuance of the license.
 
 
 19
 Appellant argues that the interest was disclosed and approved. He bases this argument on the fact that he and Wise completed a joint application for transfer and that the joint application was acted upon by the ABC. While these facts are true, there is no documentary evidence that the ABC approved appellant's joint interest. Rather, it appears that the commission was merely acting upon an application assuming that the joint interest had been previously disclosed. We do not accept appellant's argument that one can receive approval of a joint interest in a business licensed to sell alcoholic beverages in an implicit manner. Absent any documentary evidence indicating that the ABC approved of appellant's interest, we agree with the district court's finding that appellant did not have a lawful interest in R & W that was harmed by appellees' unlawful actions. Accordingly, since appellant did not have a lawful interest in R & W and did not have any interest in the license, we AFFIRM the judgment of the district court.
 
 
 20
 RYAN, Circuit Judge, dissenting.
 
 
 21
 My brother's opinion concludes that the district court correctly ruled that plaintiff does not have standing to sue for a violation of Sec. 4(a) of the Clayton Act, 15 U.S.C.A. Sec. 15(a) (Supp.1989), because, under Tennessee's liquor licensing law, "[plaintiff] did not have a lawful interest in R & W." Because I believe that the antitrust laws, as they have consistently been interpreted in the federal courts, do not require a plaintiff's business interest to be licit for purposes of standing to sue under Sec. 4, I must respectfully dissent.
 
 
 22
 This court has observed that a plaintiff must meet three prerequisites in order to have standing to sue under Sec. 4:
 
 
 23
 1. Defendant has caused plaintiff injury in fact.
 
 
 24
 2. The interest plaintiff seeks to protect is arguably within the zone of interests protected by the relevant antitrust statute.
 
 
 25
 3. Plaintiff must allege an antitrust injury.
 
 
 26
 Riverview Investments, Inc. v. Ottawa Community Improvement Corp., 769 F.2d 324, 328 (6th Cir.), modified, 774 F.2d 162 (6th Cir.1985). The majority reasons, as the district court did, that plaintiff is without standing to assert a Clayton Act violation because his interest, if any, in the Red & White Liquor Store was undisclosed to the Tennessee licensing authorities and was therefore illegal under Tennessee law. Therefore, the reasoning goes, plaintiff is unable to show a "lawful" injury in fact, the first element necessary to demonstrate standing under Sec. 4.
 
 
 27
 Plainly, Red & White Liquor Store suffered an antitrust injury which implicated interests within the zone protected by Sec. 1 of the Sherman Act, 15 U.S.C.A. Sec. 1 (Supp.1989), as a result of defendants' conspiracy to control the transfer decisions of the Alcoholic Beverage Commission ("ABC") for the competitive benefit of liquor retailers favored by defendants. Thus, the only real question presented is whether plaintiff was personally damaged by the injury suffered by Red & White.
 
 
 28
 Although the majority opinion declares that "appellant had an existing interest in R & W and was a competitor in the liquor sales market," the district court did not actually make a finding on the issue of whether plaintiff was a partner in Red & White at the time the transfer application was denied. Instead, it concluded that any ownership interest plaintiff had in the liquor store was illegal because Tennessee law requires all persons with ownership interests to be listed as licensees on the liquor license. The district court implicitly held that plaintiff's putative business or property interest is defined by the extent of plaintiff's compliance with Tennessee law governing the transferability of its liquor licenses, specifically, the right to have the ABC consider a transfer application filed by him. Because the court found that the ABC would not grant such an application filed by plaintiff given that he did not hold a liquor license, the court concluded that plaintiff has no business or property interest in the ABC's decision, and my brothers agree. This reasoning is flawed, however, because the premise is mistaken. Plaintiff had no particular interest in having a transfer application filed by him granted by the ABC; rather, his interest was in the approval of the transfer application of Red & White. If the ABC had not been influenced by defendants' conspiracy, it presumably would have issued the transfer to Ms. Wise--in whose name the valid liquor license was issued--and ignored plaintiff since he had no license to be transferred.
 
 
 29
 By relying upon the "illegality" of plaintiff's ownership to justify denying him standing to sue under Sec. 4, the district court effectively recognized the defense of unclean hands.[1] Thus, the legal question we should have resolved is whether a plaintiff's illegal conduct, unrelated to the antitrust violation, will bar his recovery of treble damages from defendants who have violated the antitrust laws.
 
 
 30
 The federal courts have uniformly rejected the defense of unclean hands in antitrust actions. In Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 214, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951), the Supreme Court rejected the defense offered by defendant that the plaintiff was guilty of separate antitrust offenses not involving defendant.
 
 
 31
 If petitioner [plaintiff] and others were guilty of infractions of the antitrust laws, they could be held responsible in appropriate proceedings brought against them by the Government or by injured private persons. The alleged illegal conduct of petitioner, however, could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured.
 
 
 32
 Id. More recently, several circuits have reaffirmed the unavailability of an unclean hands defense in antitrust actions by applying the rationale offered by the Supreme Court for rejecting the in pari delicto defense:
 
 
 33
 The reason why illegal conduct by an antitrust plaintiff cannot completely and automatically bar his claim is that
 
 
 34
 the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws. The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.
 
 
 35
 Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968).
 
 
 36
 First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co., 612 F.2d 1164, 1174 (9th Cir.), cert. denied, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); see also Burlington Industries, Inc. v. Milliken & Co., 690 F.2d 380, 388 (4th Cir.1982), cert. denied, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983) ("It is well settled that unclean hands is no bar to antitrust recovery") (citing Perma Life, 392 U.S. at 138, 88 S.Ct. at 1985); Pinto Truck Service, Inc. v. Motor Dispatch, Inc., 649 F.2d 530, 534 (7th Cir.1981) ("Proof of the plaintiff's unrelated unlawful conduct is not a valid ... defense to an antitrust charge") (citing Perma Life, 392 U.S. at 140, 88 S.Ct. at 1985); Lamp Liquors, Inc. v. Adolph Coors Co., 563 F.2d 425, 431 (10th Cir.1977) ("violation of a statute in the abstract is unavailable to an antitrust defendant to allow an antitrust case to be halted at the threshold") (citing Perma Life, 392 U.S. at 140, 88 S.Ct. at 1985).
 
 
 37
 Thus, it is clear from the decided cases that the district court erred by concluding that plaintiff lacked standing to sue under Sec. 4 of the Clayton Act because his ownership interest in the liquor store was unlawful under Tennessee law. It should be noted, however, that this does not necessarily mean that the illegality of plaintiff's interest in the store is irrelevant to the case at bar. In First Beverages, defendant introduced evidence showing that plaintiff's shipping arrangements had violated certain ICC regulations and that the ICC would have soon discovered the violations. This discovery would have limited the profits plaintiff would have earned even if defendant had not illegally restricted the territories in which plaintiff could sell its product. 612 F.2d at 1173-74. The First Beverages court held that although plaintiff's violation of the ICC regulations did not provide defendant with an antitrust defense, the jury could consider the evidence "to show that some or all of the alleged lost profits would never have materialized." Id. at 1175. The court emphasized, however, that the use of plaintiff's illegal conduct was acceptable only because "[t]he illegality was not attacked on an abstract level; instead, [defendant] tried to show that in fact the ICC would have intervened." Id.
 
 
 38
 In sum, plaintiff's noncompliance with Tenn.Code Sec. 57-3-210 does not automatically preclude his standing to bring suit under Sec. 4 of the Clayton Act. Nevertheless, it is at least conceivable that defendants could demonstrate that his failure to comply with the Tennessee statute would have prevented him from earning some or all of the profits which he claims the defendants' conspiracy denied him. But the mere "abstract" illegality of plaintiff's conduct is not enough to bar him from bringing suit under Sec. 4 to attempt to prove his entitlement to an award of damages. Defendants must show that plaintiff would have realized no share of the profits earned by the Red & White store because he was not named as a licensee on the liquor license. It is not plaintiff's compliance or noncompliance with Tennessee's liquor licensing laws that is relevant here; rather, what is important is the existence or nonexistence of a direct economic stake in the ABC decision to deny the transfer. Only the latter is determinative of whether plaintiff suffered an "injury in fact" to his business or property by reason of anything forbidden in the antitrust laws.
 
 
 39
 Because the district court did not make a factual finding on the issue of whether plaintiff had an ownership interest at the time of the injury to the store, and because the evidence on the question is conflicting, it is not possible to determine whether plaintiff was injured in his business and property by reason of defendants' antitrust violations. I would therefore remand the case for a determination of whether plaintiff had an ownership interest in Red & White.
 
 
 
 [1]
 The complaint named several other defendants; however, all but Blanton and Allen were dismissed before trial
 
 
 [2]
 These sections read as follows:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.
 15 U.S.C. Sec. 1.
 Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
 15 U.S.C. Sec. 15.
 
 
 [3]
 The district court made two findings in this case. The court found that the defendants had engaged in a conspiracy for the restraint of trade in violation of section 1 of the Act, and found that appellant did not have standing to make a claim under section 15. Since this appeal involves the second finding, only the facts relevant to the standing issue will be presented
 
 
 [4]
 Appellant also alleged a RICO claim. See 18 U.S.C. Sec. 1964(d). This claim was voluntarily dismissed by plaintiff at the close of his case
 
 
 [5]
 In reaching this second finding, the court questioned whether appellant had any interest in R & W at all. The court's question arose on account of the dispute between the documentary evidence, which indicated that Shirley Wise was the sole owner of R & W, and the testimony of appellant and Mr. Wise that appellant purchased a property interest in R & W. See Opinion 704 F.Supp. at 1502 While appellant characterizes this discussion by the court as a finding that he had no interest in R & W, we do not believe the court made such a finding. Rather, we believe the court granted appellant his assertion that he had an interest in R & W, and found instead that such interest was illegal
 
 
 [1]
 The Ninth Circuit has observed that courts have often confused the various illegality defenses which have been asserted in antitrust actions
 Such confusion results from the failure to distinguish such defenses from the other equitable defenses. "Unclean hands" refers to the plaintiff's wrongdoing against a third party with respect to the subject matter of the suit. In pari delicto refers to the plaintiff's participation in the same wrongdoing as the defendant.
 Memorex Corp. v. Int'l Business Machines Corp., 555 F.2d 1379, 1382 (9th Cir.1977). It is clear that the defense asserted in the case at bar is of the first variety: wrongdoing by the plaintiff against a third party--here the state of Tennessee.