900 F.2d 256
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nathaniel DENNIS, Defendant-Appellant.
 No. 88-5042.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 3, 1989.
Decided: April 4, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CR-87-386-JEM)
 Frank M. Feibelman, Solove & Solove, P.A., Miami, Fla. (Argued), for appellants; Tracye K. Solove, Solove & Solove, P.A., Miami, Fla, William H. Klumpp, Jr., Towson, Md., William Purpura, Baltimore, Md., on brief.
 John Vincent Geise, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee: Breckinridge L. Willcox, United States Attorney; John V. Geise, Assistant United States Attorney; Stephen L. Purcell, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before WIDENER, MURNAGHAN and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Nathaniel Dennis appeals his conviction for possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. Sec. 846. We affirm.
 
 
 2
 Appellant Dennis was tried along with two codefendants, Rudolph Jackson and Larry Deleveaux. A jury found all three guilty of the above offenses, and all three filed timely notices of appeal in this court. Accordingly, the cases were consolidated for purposes of briefing and oral argument.
 
 
 3
 After all parties had filed consolidated briefs, Dennis' counsel requested permission to withdraw from the case. We allowed Dennis' counsel to withdraw, severed argument in this case from the other two, and continued oral argument as to Dennis. Oral argument proceeded as to Jackson and Deleveaux, however, and we affirmed their convictions by published opinion on January 3, 1989. United States v. Jackson, 863 F.2d 1168 (4th Cir.1989). After reviewing the consolidated briefs that had been filed previously, Dennis' new counsel informed the court that there was no need for additional briefing.
 
 
 4
 Because our decision in Jackson was in part in response to the same briefs, we already have resolved several of the issues in this case. Specifically, we rejected appellants' claims that: the Anti-Drug Abuse Act of 1986, under which they were convicted, is unconstitutional; the district court erred by admitting hearsay statements into evidence against them; and a false statement made by Deleveaux should not have been admitted into evidence because it was secured in violation of the fifth amendment. Jackson, 863 F.2d at 1171-73. The only claims left to consider, therefore, are those claims that apply only to Dennis, namely that the district court erred in not suppressing evidence seized at the time of his arrest, and that the evidence produced at trial was insufficient to support his conviction.[1] For this reason, and because most of the facts are set forth fully in our earlier opinion, we limit our factual discussion to those facts necessary to add clarity to this decision.
 
 
 5
 Dennis first contends that several items of evidence which were seized from his residence at the time of his arrest should have been suppressed as the fruits of an unconstitutional search and seizure. The district court found that the consent search in question was not unconstitutional, a finding that we will not disturb unless clearly erroneous. United States v. Porter, 738 F.2d 622, 625 (4th Cir.) (en banc), cert. denied, 469 U.S. 983 (1984); accord United States v. Gray, 885 F.2d 320, 322 (4th Cir.1989).
 
 
 6
 Following Dennis' indictment, several members of the Drug Enforcement Administration Task Force arrested Dennis at his home, pursuant to a valid arrest warrant. Detective Sergeant Anthony Cannavale, who was primarily responsible for the arrest, testified at the suppression hearing that Dennis was alert and cooperative when the officers entered his home to effectuate the arrest. Cannavale asked Dennis if he would voluntarily consent to a search of the residence and informed Dennis that he had the absolute right to refuse.[2] Cannavale further stated that he did not mention getting a search warrant or that a consensual search would look better for Dennis when he got to court. Dennis consented to the search as long as he was present in the dwelling, but said he refused to sign any forms. After placing a call to the agent in charge of the case, Cannavale and the other agents went ahead with the search. Cannavale specifically testified that Dennis placed no conditions on his verbal consent to search, other than that he be present in the house. On direct examination, Cannavale stated that among the items seized from Dennis' residence were two address books. On cross-examination, Cannavale testified that he never asked Dennis for a key to Dennis' locker at work, nor did he hear anyone else make such a request.
 
 
 7
 Approximately ten or fifteen minutes after the officers began searching, Dennis notified Cannavale that he wished to withdraw his consent. Cannavale testified that the officers stopped searching, gathered up the items they had found to that point which appeared to be potential evidence, and transported Dennis to the DEA office in Miami for processing. Cannavale and his men conducted no further searches of the Dennis residence, and Cannavale knew of no other searches by anyone connected with the case.
 
 
 8
 Special Agent Joseph Dombrowski, who was the agent in charge of the case, testified that he encountered Dennis during processing at DEA headquarters. At that time, Dombrowski asked Dennis whether he had consented to the search. Dennis stated that he had, and that he still would consent to a search of the home if he was present, but that he would not sign any forms.
 
 
 9
 Dennis' testimony at the suppression hearing was in sharp contrast to that of Detective Cannavale. Dennis testified that he initially refused to consent to the search, but eventually gave a limited consent. Dennis stated that Cannavale told him that the agent could get a warrant, and that if he did get a warrant significant damage might be done to the house. In addition, Dennis said that Cannavale told him that a consensual search would look better for Dennis when he went to court. Dennis also testified that he did not see Cannavale make any phone calls prior to beginning the search.
 
 
 10
 Dennis said that when he informed Cannavale that he wished to withdraw his consent, Cannavale told him, "Well, you know, it's too late because you've already given me consent," and that Cannavale obtained some of the items taken from the home after he withdrew his consent. Finally, Dennis testified that one of the items which found its way into the government's possession, an address book, was located in a locker at his place of employment. Dennis stated that during the search of his home, one of the agents asked for the key to his locker at work, which he gave her.
 
 
 11
 A complete answer to Dennis' claim that the district court erred in not suppressing the items taken from his home is that the district court chose to believe Detective Cannavale and disbelieve Dennis. Detective Cannavale described an arrest and consensual search that could not have been conducted more lawfully, while Dennis presented a starkly different version of what took place.[3] This is precisely the sort of swearing match that must be resolved by the trial court based on the credibility of the witnesses, and we can and do decide with confidence that the decision of the district court was not clearly erroneous.
 
 
 12
 Finally, Dennis asserts that the government did not adduce sufficient evidence to support his conviction. We disagree.
 
 
 13
 The government's chief witness at trial, Harry F. Payne, Jr., testified that Dennis recruited him to transport cocaine from Miami to the Washington-Baltimore area. Dennis and Payne rented a car for the first trip to Baltimore, and Dennis accompanied Payne, Deleveaux, and Jackson on the drive. During the trip, Dennis told Payne that the cocaine was under the tire in the trunk and that Payne need not know anything else about the drug activity. After the four arrived in Baltimore, they visited two homes in the Baltimore area, where Dennis met privately with Jackson and the apparent residents of the two houses. Eventually, Dennis, Deleveaux, and Payne flew back to Miami, leaving Jackson behind.
 
 
 14
 Dennis and Payne drove alone on the second drug run to Baltimore. On subsequent trips, Payne drove north with Deleveaux, and Dennis flew to Baltimore and met the pair at the two residences that were by then their established destination. Dennis paid Payne for making each trip. In addition, Dennis continued his practice of meeting privately with others involved in the transactions, but not with Payne, after Payne arrived with the drugs. Dennis set up the train trip that led to Payne's arrest, and personally gave Payne the package of cocaine with which he was arrested in Baltimore.
 
 
 15
 The government produced other evidence that corroborated Payne's testimony. Telephone records revealed numerous toll calls between Dennis' residence and the two houses in Baltimore where Payne testified they normally delivered the drugs. One of Dennis' credit card statements reflected the rental of a car at Dulles Airport, supporting Payne's testimony that Dennis flew to Baltimore to meet him.
 
 
 16
 Dennis' conviction must stand if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Dennis' attack on Payne's credibility and motive, though entirely proper in the district court, carries little weight on appeal. As was the case with his account of the search of his residence, any questions concerning Payne's veracity simply were resolved against Dennis at trial, and we cannot second guess the jury. Given Payne's testimony and the government's other evidence, therefore, we have no difficulty concluding that a rational trier of fact could have found Dennis guilty of both the conspiracy and possession charges.
 
 Accordingly, the judgment of conviction is
 
 17
 AFFIRMED.
 
 
 
 [1]
 Jackson and Deleveaux also advanced this last argument, but we consider this issue separately as to each defendant
 
 
 [2]
 With regard to a right to refuse, Cannavale went further than the Constitution requires. See Schneckloth v. Bustamonte, 412 U.S. 218, 249 (1973)
 
 
 [3]
 We express no opinion as to whether Dennis' version of the facts, had the district court chosen to accept it, would necessitate the suppression of any of the items seized during the search