961 F.2d 1577
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GOLDEN RULE INSURANCE COMPANY, Plaintiff-Appellant,
v.
George FABE, Superintendent of Insurance for the State of
Ohio, Defendant-Appellee.
 No. 91-3629.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before NATHANIEL R. JONES, BOGGS, and BALANE NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Golden Rule Insurance Company, appeals the dismissal, for failure to state a claim, of this civil rights action challenging an Ohio statute giving the state superintendent of insurance the power to disapprove an insurance rate filing. For the reasons that follow, we affirm.
 
 
 2
 * Golden Rule Insurance Company, an Illinois-based health and accident insurer, sought to increase its premium rates charged to individual policy holders in Ohio. Approvals of such rate increases are governed by state statute. See Ohio Rev.Code Ann. § 3923.021 (Baldwin 1989). The office of the superintendent of insurance reviews nearly 3,000 sickness and accident policy filings each year.
 
 
 3
 Section 3923.021 addresses allowable rates for sickness and accident insurance. When an insurance company files its policy, including its premium rates, with the superintendent, the superintendent may disapprove that filing "if he finds that the benefits provided are unreasonable in relation to the premium charged." Id. § 3923.021(B)(1). To find that the "benefits provided are not unreasonable in relation to the premium charged" is to find that "the rates were calculated in accordance with sound actuarial principles." Id. § 3923.021(A) (emphasis added).
 
 
 4
 If the superintendent disapproves a filing because the rates are unacceptable, he must "specify the reasons for his disapproval" in a written order. Id. § 3923.021(B)(1). The insurer may then request a hearing. Subsection (D) of the statute contains additional provisions relating to hearings. In particular, it permits the superintendent to retain, "at the insurer's expense," attorneys, actuaries, accountants, and other experts not otherwise a part of his staff. Id. § 3923.021(D).
 
 
 5
 Golden Rule applied for increases in relation to three of its policies: Golden Rule Policy Forms GR-106, GR-7/8, and GRI-H-1.4. Each request for a rate increase included an actuarial memorandum justifying the requested increase, in which an accredited actuary certified that, based on his knowledge and judgment, the benefits provided were reasonable in relation to the premium charged.
 
 
 6
 Golden Rule filed requests for premium increases for GR-7/8 and GR-106 on March 15, 1989. Twenty-eight days after filing GR-7/8 and twenty-nine days after filing GR-106, Golden Rule received separate copies of the same form letter, which stated the reason for disapproval of the rate increase as follows:
 
 
 7
 3. Pursuant to Section 3923.021(B)(1), Revised Code, the Superintendent of Insurance hereby disapproves the above-referenced filings for the reason that the benefits provided are unreasonable in relation to the premium charged. The reasons for the disapproval are as follows:
 
 
 8
 Applicant has failed to fully justify that the benefits to be provided by the subject policy are reasonable in relation to the premium proposed to be charged.
 
 
 9
 J.A. at 39-40 (GR-106); see id. at 10 (GR-7/8).
 
 
 10
 On November 27, 1989, Golden Rule filed a § 1983 action against the Superintendent of Insurance for the State of Ohio, George Fabe, seeking declaratory relief for his alleged violation of the United States and Ohio Constitutions. Golden Rule claimed that Superintendent Fabe's office systematically disapproves rate revisions without first making the required statutory finding that the rates were not calculated in accordance with sound actuarial principles.
 
 
 11
 Golden Rule applied for a premium increase for policy GRI-H-1.4 on October 18, 1990. Twenty-nine days later, it received a somewhat more detailed letter disapproving the premium increase. The letter provided in relevant part as follows:
 
 
 12
 3. Pursuant to Section 3923.021(B)(1), Revised Code, the Superintendent of Insurance hereby disapproves the above-referenced filings for the reason that the filing is not actuarially sound. The reasons for the disapproval are as follows:
 
 
 13
 Insurer has failed to fully document the development of anticipated loss ratios.
 
 
 14
 Insurer has failed to fully justify the anticipated loss ratio employed to develop the required or requested premiums.
 
 
 15
 Insurer has failed to fully justify its rating methodology employed to develop the required or requested premiums.
 
 
 16
 Insurer has failed to fully demonstrate a history of current incurred claims and losses which would tend to justify the required or requested premiums.
 
 
 17
 Id. at 79-80. Because this filing and denial occurred while its action was already pending with respect to GR-106 and GR-7/8, Golden Rule amended its complaint to include GRI-H-1.4.
 
 
 18
 Golden Rule did not seek a hearing in regard to any of its filings. At the time of filing, Golden Rule had only three Ohio, GR-106 policyholders, and it had only seven Ohio, GR-7/8 policyholders. If the increase had been granted, Golden Rule would have earned an additional $356.36 per year from the GR-106 policyholders (whose number decreased to two) and an additional $3,086.06 per year from the GR-7/8 policyholders (whose number decreased to four). Thus, Golden Rule did not seek a hearing in connection with the denial of these increases because the costs that would be assessed against Golden Rule for the retention of professionals to testify at the hearing would have exceeded the value of the yearly premium increase requested. Golden Rule does not claim, however, that the cost of a hearing on the GRI-H-1.4 requested rate increase would exceed the value of that rate increase--approximately five million dollars per year.
 
 
 19
 On February 1, 1991, Superintendent Fabe filed a motion to dismiss, which the district court granted on June 7, 1991. In addressing the merits of Golden Rule's claims, the court reasoned first that the statute, on its face, did not violate constitutional due process. Second, the court held that Golden Rule cannot maintain a claim that Superintendent Fabe is failing to follow the law, because any such failure of the superintendent would constitute merely a departure from state procedure, and Parratt v. Taylor, 451 U.S. 527 (1981) bars such claims in federal courts. Golden Rule now brings this appeal.
 
 II
 
 20
 Golden Rule contends that the district court erred in granting Superintendent Fabe a Rule 12(b)(6) dismissal for failure to state a claim. Golden Rule's contentions address both the superintendent's conduct and the statutory scheme itself. Whether the district court correctly dismissed a suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a question of law subject to de novo review. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 111 S.Ct. 182 (1990). The court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts that would entitle plaintiff to relief. Id. at 475.
 
 
 21
 Thus, in reviewing this Rule 12(b)(6) dismissal, we must accept Golden Rule's allegations as fact. Accordingly, we must proceed from the assumption that the superintendent automatically disapproves requests for increases without actually determining whether the requests are properly calculated. Once that assumption is made, however, Golden Rule's claim must fail under the doctrine espoused in Parratt v. Taylor, 451 U.S. 527 (1981).
 
 
 22
 If the superintendent issues a finding that an applicant's request is actuarially inadequate, without actually conducting an actuarial review, the superintendent has undoubtedly failed to exercise his duties under state law. Thus, such a failure is a random and unauthorized act. See Vinson v. Campbell County Fiscal Court, 820 F.2d 194, 199 (6th Cir.1987); Four Seasons Apartment v. City of Mayfield Heights, Ohio, 775 F.2d 150, 152 (6th Cir.1985); Kumar v. Marion County Common Pleas Court, Division of Domestic Relations, 704 F.2d 908, 910 (6th Cir.1983). It follows that Golden Rule must plead and prove the inadequacy of the state's corrective process in order to even state a cause of action. See Hudson v. Palmer, 468 U.S. 517, 531-33 (1984); Huron Valley Hospital, Inc. v. City of Pontiac, 887 F.2d 710, 716 (6th Cir.1989); Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir.1986); Wilson v. Beebe, 770 F.2d 578, 583-84 (6th Cir.1985) (en banc); Vicory v. Walton, 721 F.2d 1062, 1065-66 (6th Cir.1983), cert. denied, 469 U.S. 834 (1984). Certainly, there is no sense in which the Ohio judicial system is inadequate to provide a remedy for Superintendent Fabe's alleged acts.[1]
 
 
 23
 In light of the foregoing application of Parratt v. Taylor, Golden Rule's contention narrows to a challenge to the statute itself. Golden Rule argues that the statutory provision providing for attorneys, accountants, and actuaries fees has a chilling effect on due process rights whenever small claims are involved; the applicant will not request a hearing whenever the cost of the hearing would exceed the value of the requested increase.
 
 
 24
 Golden Rule's challenge is unpersuasive. First, it is readily apparent that Golden Rule's contention is pure sophistry. Golden Rule would have us adopt a broad policy that would balance the administrative cost of a rule against its benefit to the private party. Imagine how such a rule would operate in a different context, such as environmental regulation. A private corporation could contend that the burdensome governmental process necessary to obtain permission to proceed with its project outweighs the financial benefit that the corporation will derive from the project. Thus, the argument would proceed, the corporation should be allowed to avoid the environmental regulation. Common sense and policy considerations, of course, dictate the opposite. The state of Ohio certainly has the power to regulate insurance, and the instant regulations are well within that power.
 
 
 25
 Second, legal analysis reveals that Golden Rule has no property interest in an increased premium until the premium increase is approved. Ohio undoubtedly has a scheme of regulation; Golden Rule cannot simply increase its premiums without first requesting an increase. Golden Rule argues, however, that Littlefield v. City of Afton, 785 F.2d 596 (8th Cir.1986) and Spruytte v. Walters, 753 F.2d 498 (6th Cir.), cert. denied, 474 U.S. 1054 (1985) support its claim.
 
 
 26
 In Littlefield, the Eighth Circuit held that applicants for building permits have a constitutionally protected property interest, which is conditioned only upon compliance with the legal requirements contained in the city's ordinances. Littlefield, 785 F.2d at 602. Thus, the city could not impose an additional requirement that the applicants convey a right-of-way to private parties. Id.
 
 
 27
 The instant case, however, is distinguishable from Littlefield. Superintendent Fabe denied the request for a premium increase based on his finding that the increase was not calculated using proper actuarial procedures.[2] Similarly, the city in Littlefield could have rejected the application for a building permit if the application did not meet the legal prerequisites. The Littlefield court objected only to the city's reliance on factors outside the statute. The superintendent, on the other hand, ostensibly relied upon factors provided in the statute; accordingly, no property interest is implicated in his failure to approve the increase.
 
 
 28
 Spruytte involved a prisoner's right to receive publications. 753 F.2d at 501. That case held merely that, when the state of Michigan afforded prisoners the right to receive any publication that does not threaten the prison's security, the prison officials could not adopt a rule that any publications received from a source other than the publisher threatened security. Id. at 507-08. The right afforded by administrative rule was broader than the prison's policy; thus, the prison officials deprived the prisoner of a property interest without due process.
 
 
 29
 Spruytte has no application in the present context. Section 3923.021(B)(1) of Ohio's Revised Code only creates a property interest in requests for increases that the board considers actuarially sound. Although Superintendent Fabe's automatic rejection of applications might indeed deprive Golden Rule of its statutory right, the automatic rejection claim is barred by the doctrine of Parratt v. Taylor, because Golden Rule's rights may be vindicated in an appeal to state court. Thus, the statute itself does not violate Golden Rule's rights, because the Superintendent may properly reject an application based on a ground stated in the statute without implicating Spruytte.
 
 
 30
 Finally, even if a property right attached upon the filing of an application, deprivation of the property does not occur without a hearing. Golden Rule could have requested the opportunity to demonstrate that it calculated its increases properly. This same principle defeats Golden Rule's claim of inadequate notice as to what aspect of its calculations were improper; Golden Rule receives a full hearing, albeit at its own expense, to demonstrate the propriety of all aspects of its calculations. Similarly, Golden Rule cannot claim that Superintendent Fabe denies its right to due process by failing to employ an actuary in making his initial determination as to actuarial soundness. The hearing process affords an opportunity to have an actuary review the request for increase.
 
 III
 
 31
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Because of our disposition of this issue, we need not reach the Superintendent's argument in favor of abstention. The practical effect of applying Parratt v. Taylor is the same as abstaining. We note, however, that the most persuasive case for Golden Rule, Blue Cross, Inc. v. Bell, 607 P.2d 498 (Kan.1980), was decided by the Kansas Supreme Court, demonstrating the strong state interests at stake here
 
 
 [2]
 GR-106 and GR-7/8 were actually rejected as "unreasonable." This rejection, however, occurred before the decision in Community Mutual Ins. Co. v. Fabe, 556 N.E.2d 1155 (Ohio Ct.App.1990). Because both parties and the district court assume that the rejections were in fact based on noncompliance with sound actuarial principles, we accept that assumption