998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick Ozoya MUSA, a/k/a Moses T. Batrade, a/k/a Batrade T.
Moses, Defendant-Appellant.
 No. 92-5259.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1993.
Decided: July 7, 1993.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden, II, Chief District Judge. (CR-91-351)
 John Robert McGhee, Jr., Kay, Casto, Chaney, Love & WISE, Charleston, West Virginia, for Appellant.
 Michael Lee Keller, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before WIDENER, Circuit Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Patrick Ozoya Musa appeals his conviction for bank fraud under 18 U.S.C. § 1344. He argues that the district court erred in denying his motion for acquittal at the close of the government's case, and later motion for judgment of acquittal after discharge of the jury, and in excluding testimony of certain of the appellant's witnesses. Finding these contentions without merit, we affirm.
 
 I.
 
 2
 On July 24, 1991, Musa opened a checking account at the Texas Capital Bank under the name of Batrade T. Moses, an alias which he supported with documents purporting to identify him as Moses. Three minor deposits were made in September of $200, $200, and $30. On September 17, 1991, appellant deposited a check for $15,700 payable to Batrade T. Moses into the account. That check was drawn on the account of Colgasco Employee Federal Credit Union at National Bank of Commerce, Charleston, West Virginia, and was counterfeit.
 
 
 3
 Thereafter, on September 23, 1991, Musa withdrew $600, and $3,400 from the account, and, on September 24, 1991, one Kunlay Sodipo withdrew $650. Musa also withdrew $3,500 and $3,000 that day. The Houston Police arrested Musa and Sodipo following the $3,000 withdrawal.
 
 
 4
 On interrogation, the appellant and Sodipo offered a number of explanations for the deposit and the partial withdrawals of the funds created by deposit of the Colgasco check. Musa told the bank that he received the money from his Embassy, the Nigerian Embassy, to pay for his schooling. Musa then told police that the check was in payment for art work that he had done for a white man out of New York by the name of Robert Moles. Further, Musa told police that he was paying Sodipo for art supplies that Sodipo had bought Musa in New York. Sodipo told police that Musa was paying him for a car he had sold to Musa.
 
 
 5
 Trial was held from March 24 to March 26, 1992, and on the evidence, the district court granted a judgment of acquittal in favor of Sodipo.
 
 II.
 
 6
 The standard of review for the exclusion of testimony of appellant's witnesses is abuse of discretion. United States v. Webster, 639 F.2d 174, 186 (4th Cir. 1981). Musa argues that evidence of the real Batrade Moses was relevant to establish that Musa knew Moses, was handling art sales for Moses and could, therefore, legitimately have come into large sums of money through that activity. The appellant cites United States v. Valenzuela-Bernal, 458 U.S. 858 (1982), in support of his contention that the evidence of his witnesses to establish the existence of Moses should have been admitted as both material and favorable for the defense. Though Musa refers to no specific language, apparently he is referring to the "conceivable benefit" test in that opinion where the court found a constitutional violation in the government's pre-trial deportation of aliens who were eyewitnesses to the crime and whose testimony could conceivably have benefited the defendant. Id. at 862.
 
 
 7
 In this case, the issue involved is whether Musa knew that the Colgasco check was counterfeit. That is the only contested fact. The testimony establishing the existence of Moses could have shed no light on the issue of whether Musa knew that the check was counterfeit. Appellant admitted that he could offer no evidence that the Colgasco check was connected with the real Batrade Moses. Neither could he proffer testimony that Moses authorized the opening of the checking account in his name. The admission of evidence is a matter committed to the discretion of the court, and, under these circumstances, the district court committed no error in excluding the testimony of appellant's witnesses as being irrelevant.
 
 III.
 
 8
 The standard of review for decision on the motion for acquittal is whether a fact-finder could have inferred, beyond a reasonable doubt, that the crime was committed. United States v. Anderson, 611 F.2d 504, 508 (4th Cir. 1979), and on the motion for judgment of acquittal is to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989). The basic argument that appellant advances is that the evidence was insufficient to prove that he knew the Colgasco check was counterfeit. Defendant bases his argument principally on United States v. Maura, 778 F. Supp. 835 (D. Md. 1991), and United States v. Rhodes, 886 F.2d 375 (D.C. Cir. 1989). In Maura the court found that the incriminating statements and the activities of Maura could very well have led Maura to believe or to know that the check in question was stolen, or that it had been misappropriated or wrongfully converted or that it was otherwise wrongfully in his possession. However, nothing in the record showed that Maura knew the check was counterfeit. The check was sufficiently authentic that bank personnel processed the check, and the government offered no evidence indicating how defendant obtained the check. It should be noted that in Maura the instrument in question was a bearer check, which is presumed to be valid and negotiable in the hands of any holder, so that possession of the check alone would not permit an inference of knowledge that the instrument was counterfeit.
 
 
 9
 In the case before us, however, the Colgasco check was drawn in favor of a specific individual and negotiated by Musa while posing as that individual. Thus, Musa employed additional deception in order to negotiate the check and deflect any scrutiny of its authenticity. This deception supports the jury's finding that Musa knew the check was counterfeit. No such additional deception was employed by Maura. Both the deception and the nature of the instrument deposited distinguish this case from the Maura case.
 
 
 10
 In Rhodes, the defendant was in the business of cashing checks for Nigerian residents at a discounted rate. One of the checks he deposited was counterfeit and he maintained that he did not know it was counterfeit. The court reversed Rhodes' conviction, based on the admission of evidence regarding fraudulent checks that were not connected to Rhodes. Id. at 382. Rhodes had a credible explanation for his possession of the check, whereas in this case, the appellant has advanced several conflicting explanations for his possession of a check in the amount involved in this case.
 
 
 11
 The actions of the appellant in opening the account in July under a fake name, using fictitious identification documents, conducting minor transactions in the account, thus lending legitimacy to the account, and in advancing conflicting explanations for his possession of the check, as well as the actions of the appellant and Sodipo in withdrawing the funds promptly after deposit of the check all combine to indicate a pattern that the jury had before it with little or no supported contrary evidence. This evidence, and the reasonable inferences to be drawn therefrom in the light most favorable to the government, coalesce to give a reasonable jury adequate grounds for concluding beyond a reasonable doubt that the appellant knew the Colgasco check was counterfeit and finding appellant guilty.
 
 
 12
 For the reasons indicated, the decision of the district court in denying the motion for acquittal and the motion for judgment of acquittal, together with the court's actions in refusing the testimony of certain of the appellant's witnesses, all are
 
 
 13
 AFFIRMED.