7 F.3d 227
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Russell DYE, Sr., Defendant-Appellant.
 No. 92-5581.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 1, 1993.
Decided: September 29, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-144-A)
 Robert Stanley Powell, Linda S. Chapman, Powell & Colton, P.C., Alexandria, Virginia, for Appellant.
 Richard Cullen, United States Attorney, Daniel C. Stark, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, NIEMEYER, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Robert Russell Dye, Sr. appeals from his convictions of involuntary manslaughter (18 U.S.C. § 1112 (1988)), reckless driving (Va. Code Ann. § 46.2-852 (Michie 1989)) assimilated by 18 U.S.C. § 13 (1988)), driving while intoxicated (36 C.F.R. § 4.23(a)(2) (1992)), and driving while under the influence of alcohol (36 C.F.R. § 4.23(a)(1) (1992)). After his conviction in a bench trial and the preparation of a pre-sentence report, the court sentenced Dye to fifteen months in prison and one year of supervised release for involuntary manslaughter and three months in prison to run concurrently for each of the other convictions. Because we find that the court did not abuse its discretion in admitting results of a blood-alcohol analysis, that Dye was properly charged with reckless driving under assimilated Virginia law, and that the evidence was sufficient to support his convictions, we affirm.
 
 
 2
 Dye's convictions stem from a June 1991 automobile accident which occurred while he was driving home from a restaurant in the early morning. The driver of the other vehicle was killed. Dye asserts that the court improperly admitted results of a blood analysis of a sample of blood which showed that the blood had an alcohol content of .15% because the government failed to establish that the blood was his.
 
 
 3
 Blood samples were taken from both drivers at the scene of the accident. The medical technician who drew the blood testified that two large tubes of the blood had red tops, one tube had a light blue top, and one tube had a lavender top. An emergency room nurse stated that records for Robert Dye were labeled" John B. Doe," and records for Paul Adams (the decedent) were labeled"John A. Doe." She continued that corresponding lab slips were generated and that the blood drawn at the accident scene was the blood sent to the lab for testing. Dye's blood was type O, and Adams's was B positive.
 
 
 4
 The lab technician who performed the blood-alcohol testing at the hospital identified her handwriting and lab number on the lab slips that accompanied the samples. She testified that the lab slip that identified the tube of Dye's blood indicated that the sample was in a tube with a green top. Her analysis found an alcohol level of .15% in that sample.
 
 
 5
 Despite the discrepancy in the color of the test tube tops, the court admitted the test results over Dye's objection. The court found that the chain of custody of the sample of blood taken from Dye was adequately established. The purpose of establishing"chain of custody" as a threshold requirement to admission of evidence is to establish that the item to be introduced is what it purports to be. United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.), cert. denied, 459 U.S. 874 (1982). The ultimate question is whether the authentication testimony "was sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." Id. (citing United States v. Brewer, 630 F.2d 795 (7th Cir. 1980)). Precision in developing chain of custody is not an iron-clad requirement. Id. Admission of evidence is not prevented just because there may be a missing link in its chain of custody, "so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." Id. (citations omitted). Resolution of a chain of custody question rests with the sound discretion of the trial judge. Id.
 
 
 6
 Though there is some confusion over the color of the top of the tube that contained Dye's blood, there is ample evidence supporting the court's conclusion that the "John B. Doe" blood sample that tested with an alcohol content of .15 was Dye's. The blood samples were of two different blood types. Dye admitted that he had consumed six beers on the evening of the accident, and the office manager of the towing company that towed Dye's car from the accident scene testified that there were "at least six or seven" empty twelve-ounce beer bottles in the car when it was brought in. Since there was evidence supporting the court's determination that the chain of custody of the blood sample was adequately established, we find that the district court did not abuse its discretion in admitting the test results.
 
 
 7
 Dye was convicted of reckless driving under Va. Code Ann. § 46.2-852, which provides:
 
 
 8
 Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving.
 
 
 9
 Dye was charged under the Virginia law pursuant to the Assimilated Crimes Act, 18 U.S.C. § 13 (1988). At the close of the government's case, Dye moved for acquittal on all counts. He argued that the reckless driving count under Virginia law violated the Assimilated Crimes Act. Dye argued that there is a federal regulation, 36 C.F.R. § 4.22(a)(1) (1992), which prohibits the same conduct as the Virginia statute,* and he therefore could not be charged under the Virginia law since there was a federal law covering the same conduct. The court denied the motions.
 
 
 10
 Since the federal regulation explicitly states that it covers offenses that are "less serious than reckless driving" and that reckless driving is defined by state law, Dye's argument that the Virginia reckless driving law and the federal regulation cover the same offense is meritless. Therefore, prosecution of Dye under Va. Code Ann. § 46.2-852, assimilated by 18 U.S.C. § 13, was proper.
 
 
 11
 Dye also asserts that the evidence was insufficient to support his convictions of driving while intoxicated, driving under the influence of alcohol, and involuntary manslaughter. In evaluating the sufficiency of the evidence to support a conviction, the relevant question is whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). This Court must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established. Id. This Court does not weigh evidence or review the credibility of witnesses in resolving issues of substantial evidence. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Circumstantial evidence need not exclude every reasonable hypothesis of innocence. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989).
 
 
 12
 Dye was charged with involuntary manslaughter under 18 U.S.C. § 1112 (1988), which defines involuntary manslaughter as the unlawful killing of a human being without malice
 
 
 13
 [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.
 
 
 14
 There was evidence presented at trial that Dye consumed several beers on the evening of the car accident that caused the victim's death, that he was speeding excessively, that the emergency room doctor who treated him detected alcohol on his breath, that there were six to seven empty bottles of beer in his vehicle, and that his blood alcohol level was .15%. Expert testimony also disclosed that there were no skid marks found at the scene from Dye's vehicle that would indicate any braking or evasive maneuver on his behalf. Construing this evidence in the light most favorable to the government, it is sufficient to support Dye's involuntary manslaughter conviction.
 
 
 15
 Dye was also charged with driving while intoxicated under 36 C.F.R. § 4.23(a)(2) (1992) and driving while under the influence of alcohol under 36 C.F.R. § 4.23(a)(1) (1992). Dye asserts that there was insufficient evidence that he was intoxicated or driving under the influence of alcohol because the government failed to establish that the blood analysis was performed on his blood. Dye continues that defense witnesses testified that they did not note any behavior indicative of intoxication (erratic driving, stumbling, slurred speech).
 
 
 16
 Dye acknowledged his consumption of alcohol, however, and, as noted, empty beer containers were found in his vehicle after the accident. In addition, an emergency room doctor detected the smell of alcohol on his breath and the district court properly found that the blood analysis in question was performed on a sample of Dye's blood. Construing this evidence in the light most favorable to the government, it was sufficient to support Dye's convictions for driving while intoxicated and driving while under the influence of alcohol.
 
 
 17
 For these reasons, we affirm Dye's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Title 36 C.F.R. § 4.22(a) defines "unsafe operation" of a motor vehicle. It states:
 The elements of this section constitute offenses that are less serious than reckless driving. The offense of reckless driving is defined by State law and violations are prosecuted pursuant to the provisions of 4.2 of this chapter.
 The regulation prohibits "operating a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road and light conditions and road character." It also prohibits "failing to maintain the degree of control of a motor vehicle necessary to avoid danger to persons, property or wildlife."