36 F.3d 1095
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lem PERSON, Defendant-Appellant.
 No. 93-5937.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 28, 1994.
Decided September 8, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-93-50-F)
 Jack B. Crawley, Jr., Raleigh, NC, for appellant.
 Janice McKenzie Cole, U.S., Atty., John S. Bowler, Asst. U.S., Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINSON, HAMILTON, and WILLIAMS, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 Lem Person appeals his conviction for forgery of the endorsement on a United States Treasury check, and aiding and abetting, in violation of 18 U.S.C.A. Sec. 510(a) (West Supp.1994), 18 U.S.C. Sec. 2 (1988). Specifically, he challenges the sufficiency of the evidence to support the jury's finding that he forged the endorsement of a United States income tax return check made payable to "Maurice Southernland" on April 1, 1988, and cashed the check. We affirm Person's conviction.
 
 
 2
 The charges against Person stemmed from a scheme whereby Person, together with Bobby Lewis Knott,[1] cashed an income tax refund check Person had that belonged to Maurice Southerland. Knott testified that Person approached him for the purpose of obtaining his assistance in cashing the stolen income tax check of Maurice Southerland, whom they both knew. Knott and Person devised a plan to deceive a local drugstore owner, Morris Hedgepeth, into believing that Person was actually the intended payee, Maurice Southerland. According to the plan, Person would enter the store first and present the check for cashing. Knott was to follow, and greet Person as Southerland. The plan worked as intended. Knott assured Hedgepeth that Person was Southerland, and even co-signed the check. Hedgepeth cashed the check.[2]
 
 
 3
 While Knott admitted that he had not actually witnessed Person sign Southerland's name to the check, he testified that (1)when Person approached him to solicit his assistance, the back of the check had not been endorsed; (2)when they got to the store and he co-signed the check, the check was endorsed with Southerland's name (misspelled like the payee name on the front of the check); and (3)the only people in the store were he, Person, Hedgepeth, and another woman that worked at the store. Knott also testified that Hedgepeth's practice was never to cash a check for anyone unless they endorsed it in front of him.
 
 
 4
 Hedgepeth identified the check as one he had cashed in his drugstore. He testified that he remembered someone coming in and wanting to cash the check without proper identification. He also remembered Bobby Knott being there and vouching for the person presenting himself as the payee on the check. Hedgepeth testified that he did not pay much attention to the other individual who presented the check. He attested that later, an individual identifying himself as Lem Person came to the drugstore, saying that he was being questioned about the check. Hedgepeth was unable to identify the Defendant at trial as the individual who had presented the check to him.
 
 
 5
 Maurice Southerland testified that he did not receive the check in question, and did not authorize anyone to endorse or negotiate the check on his behalf. When the income tax refund check at issue was mailed to him, he was receiving his mail at a mailbox on the side of the road, adjacent to that of Mary Barnes, Person's girlfriend at the operative time. Southerland testified that his last name had been misspelled on the check, and that the forger had duplicated the mistake.
 
 
 6
 Three Secret Service agents testified. Of these, two were handwriting analysts--one testified that it was "highly probable" that the endorsement on the back of the check was written by Person; another testified that "a strong probability exists" that Person executed the Southernland endorsement on the check. A third agent who had only basic training in handwriting analysis testified that while at the time of trial she thought Person executed the endorsement, when she originally obtained handwriting exemplars from Person, she noted in her report that they appeared "dissimilar" to the forged endorsement.
 
 
 7
 Person was sentenced to four months in a community correction center, three years of supervised release, ordered to pay restitution in the amount of $695, and the mandatory $50 special assessment. Payment of a fine was waived due to Person's inability to pay. Person timely appealed his conviction.
 
 
 8
 A jury verdict must be sustained if there exists substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). The relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Person guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). "We must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." Id. In resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). Circumstantial evidence need not exclude every reasonable hypothesis of innocence. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 
 9
 We find that the facts here were sufficient to lead a rational jury to conclude that Person was involved in the cashing of the United States Treasury check. Further, the testimony of Knott, and the Secret Service handwriting analysts, while circumstantial, was sufficient to lead a rational trier of fact to conclude that Person was the individual who signed Southerland's name to cash the check. See United States v. Jackson, 863 F.2d at 1173; United States v. Chappell, 353 F.2d 83, 84 (4th Cir.1965). Accordingly, we affirm Person's conviction.
 
 
 10
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Knott pled guilty to the same offense charged against Person, and later testified against Person
 
 
 [2]
 Knott testified that the reason Hedgepeth was willing to cash the check on his word was that Hedgepeth had done business with Knott's family for years, and Knott had worked for Hedgepeth's brother