**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4374

JOSE M. SALAS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CR-97-328)

Submitted: December 8, 1998

Decided: December 31, 1998

Before HAMILTON, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Cary B. Bowen, Amy M. Curtis, BOWEN, BRYANT, CHAMPLIN
& CARR, Richmond, Virginia, for Appellant. Helen F. Fahey, United
States Attorney, N. George Metcalf, Assistant United States Attorney,
Ann J. Haselbauer, Third-Year Law Student, Richmond, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Jose Salas of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1994), and aiding and abetting in violation of 18 U.S.C. § 2 (1994). Salas appeals his conviction, asserting that the district court erred in denying his motion to suppress evidence and that the evidence was insufficient. We affirm.

I.

The facts are not in dispute. Testimony at the suppression hearing disclosed that police officers conducting interdiction at the bus station in Richmond, Virginia, watched three adults (one of whom was Salas) and a child place three bags in the trunk of a taxi after they left the bus. Special Agent Anthony Patterson, who was dressed in plain clothes, approached the taxi and identified himself to Salas by displaying his badge. Agent Patterson asked Salas in English if he would talk to him. When Salas exited the taxi, Agent Patterson asked if he could see Salas' bus ticket. Salas showed Agent Patterson the ticket and told him that he lived in Richmond and had just arrived from New York.

Agent Patterson explained to Salas that he and other officers were investigating the flow of drugs into Richmond and asked Salas if he had any drugs. Salas said that he did not. Agent Patterson then asked Salas if he could search the bags. Salas said yes, asked the taxi driver to open the trunk, and identified all three bags as his.

Agent Patterson searched the bags and discovered red, white, and yellow candles, each of which was in a glass container and wrapped in newspaper. Patterson removed a red candle and noticed either paper or plastic in the bottom of the glass container. When asked about the substance, Salas responded that the candles were just made

2

that way. Another officer also inquired about the red candle. Salas told him that he had purchased it in New York to use for religious purposes and that it cost ninety-nine cents. Salas then placed the candle between his legs. The officer offered to buy the red candle from Salas for two dollars. Salas removed a yellow candle from the bag and offered it to the officer. The officer again said he was interested in buying the red candle, and Salas handed it to the officer, who, in turn, gave the candle to Patterson. Patterson broke the candle on the sidewalk, and he discovered approximately sixty grams of heroin. The red candles in the bags contained heroin, but the yellow and white candles did not.

The officers arrested Salas and gathered routine information. Salas answered all of the officers questions in English. Although he spoke English with an accent, he appeared to understand the officers and conversed in English with little difficulty. When the officers began to advise Salas of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), he said for the first time that he did not understand English. Although Salas was a native of the Dominican Republic and had been in the United States only four years, he did not inform the officers that he was a foreign national or a citizen of another country nor did the officers inquire as to his nationality. Salas testified that he would have obtained assistance from the consulate had he been informed that he could do so.

Salas moved to suppress the heroin on the grounds that he did not consent voluntarily to the search and that the officers violated Article 36 of the Vienna Convention.[1] The district court denied the motion, finding that under the totality of the circumstances, Salas voluntarily consented to the search of his bags and that the failure to allow Salas to contact his consul did not violate his constitutional rights. After Salas' trial, the jury convicted him of possession with intent to distribute heroin.

---

[1] The district court sua sponte questioned whether officers could have stopped Salas in the first instance. Salas' counsel stated that under Florida v. Royer, 460 U.S. 491 (1983), the officers' interdiction did not violate the Fourth Amendment.

II.

Salas first challenges on appeal the district court's denial of the motion to suppress, asserting that he did not consent voluntarily to the search and that officers violated provisions of the Vienna Convention.[2] On motions to suppress evidence, we review the factual findings under the clearly erroneous standard and review the legal conclusions de novo. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). Whether Salas voluntarily consented to the search of his bags is a factual question which we review for clear error. See United States v. Elie, 111 F.3d 1135, 1144 (4th Cir. 1997).

Salas asserts that his consent was not voluntary. A police officer may conduct a search without a warrant and without probable cause if the person in control of the area voluntarily consents to a search. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In determining whether consent is voluntary, the court should look to the totality of the circumstances. See id. at 227. Appropriate factors to consider include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996).

Here, the record supports the finding that Salas voluntarily consented to the search of his bags. When Agent Patterson asked Salas if he could search the bags, Salas said yes and asked the driver to open the trunk. Salas identified all three bags as his. Neither Salas' characteristics nor the conditions surrounding Salas' consent render the consent involuntary. At the time of the encounter, Salas had been living in the United States for four years and appeared to the officers

_____

[2] Salas also contends that he was seized in violation of the Fourth Amendment when the officers approached him at the taxicab outside the bus station. Salas, however, has waived review of this claim by failing to assert it in the district court after the district court raised the issue. See United States v. David, 83 F.3d 638, 641 n.5 (4th Cir. 1996) ("Waiver . . . is the intentional relinquishment or abandonment of a known right.") (internal quotation marks and citations omitted).

4

to speak and understand English with little difficulty. There were only two officers dressed in plain clothes who talked to Salas, and they did not display their weapons. Although Salas contends that officers should have informed him of his right to refuse consent, the government need not produce evidence that the defendant knew of this right to prove that the consent was voluntary. See Lattimore, 87 F.3d at 650. We therefore find that the district court did not clearly err in finding that Salas voluntarily consented to the search. See Elie, 111 F.3d at 1144.

Salas also contends that the district court erred in denying the motion to suppress based on the officers' failure to inform him that upon his arrest he had the right to contact the Dominican Republic Consul, as required by the Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 101. The Vienna Convention requires an arresting government to inform a foreign national who has been arrested of his right to contact his consul. See id. Assuming, without deciding, that Salas has standing to raise this issue, we find that he is not entitled to relief.

Neither party disputes that Salas was not informed of his right to contact his consul. However, rights created by international treaties do not create rights equivalent to constitutional rights. Cf. Murphy v. Netherland, 116 F.3d 97, 100 (4th Cir.) (habeas corpus proceeding), cert. denied, 118 S. Ct. 26 (1997). Salas therefore must establish prejudice to prevail. Cf. Breard v. Greene, 118 S. Ct. 1352, 1355 (1998) (habeas corpus proceeding and denial of petitions for writ of certiorari); Waldron v. INS, 17 F.3d 511, 518-19 (2d Cir. 1993) (deportation proceeding). Although Salas contends that had he been informed of his right under Article 36 he would have exercised it, he has not asserted how the failure would have affected the outcome of his case. We therefore find that the district court properly rejected this claim as a ground to suppress the heroin.

III.

Finally, Salas asserts that the evidence was insufficient to convict him of possession with intent to distribute heroin. In deciding whether the evidence was sufficient, the relevant question is not whether the court is convinced of guilt beyond a reasonable doubt, but rather

5

whether the evidence, when viewed in the light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997); Glasser v. United States, 315 U.S. 60, 80 (1942). Moreover, circumstantial evidence is sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis of innocence. See United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989). If substantial evidence exists to support a verdict, the verdict must be sustained. See Glasser, 315 U.S. at 80.

To establish that Salas possessed a controlled substance with the intent to distribute, the government must prove that: (1) he possessed the controlled substance knowingly; and (2) with the intent to distribute. See Burgos, 94 F.3d at 873. Possession may be actual or constructive and may be proven by circumstantial evidence. See id. Intent to distribute may be inferred from quantities of drugs too large for personal consumption. See id.

We find that the evidence was sufficient to convict Salas of possession with intent to distribute. Salas admitted ownership of the bags in which the red candles containing heroin were found. He knew that the red candles contained the heroin because he did not want to sell the red candle to the police officer but rather offered to sell a yellow candle instead. Although Salas testified that another man owned the bags containing the heroin, the jury necessarily considered and rejected that testimony. We do not review the jury's credibility determinations. See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Finally, Salas' intent to distribute may be inferred from the amount of heroin seized from one red candle, approximately sixty grams--an amount too large for personal consumption. See Burgos, 94 F.3d at 873; cf. United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992) (holding that thirteen and one-half grams of crack cocaine sufficient for jury to infer intent to distribute), overruled on other grounds, Burgos, 94 F.3d at 862. From these facts a rational trier of fact could have found that Salas possessed the heroin knowingly and with an intent to distribute. See Burgos, 94 F.3d at 862, 873.

IV.

Accordingly, we affirm Salas' conviction. We dispense with oral argument because the facts and legal contentions are adequately pre-

6

sented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7