UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

BERNARD BOB,

       *Defendant-Appellant.*

No. 02-6044

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-209, CA-00-78)

Argued: February 24, 2003

Decided: March 27, 2003

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Michael and Judge King joined.

## COUNSEL

**ARGUED:** Brian McMahon, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. S. David Schiller, Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Steven H. Goldblatt, Director, Robert L. Moore, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Paul J. McNulty, United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

NIEMEYER, Circuit Judge:

Bernard Bob, having been convicted on 13 counts charging him with drug possession with intent to distribute, simple drug possession, using or carrying of firearms during and in relationship to drug trafficking, and illegal possession of firearms, was sentenced to a total of 240 months' imprisonment. We affirmed his convictions and sentences in 1998.

On Bob's petition under 28 U.S.C. § 2255, the district court vacated the convictions on some counts and modified his sentence.

On appeal from the district court's order, Bob now maintains (1) that the district court erred in not concluding that he received ineffective assistance of counsel because of his counsel's failure to challenge the sufficiency of evidence for his convictions of using and carrying firearms during or in relationship to a drug trafficking crime; and (2) that plain error was committed in sentencing him because the district court improperly enhanced his sentences on the 18 U.S.C. § 922(g) convictions, which should have been treated as an underlying offense to his § 924(c) convictions, and thereby that the court doubly counted his firearms-possession conduct.

For the reasons that follow, we affirm.

I

Acting on a confidential informant's statement that Bernard Bob sold drugs at his residence at 2204 Parkwood Avenue, Richmond, Virginia, police obtained a search warrant and executed it on April 16, 1997. At the time when the warrant was to be executed, Bob was in the backyard with other persons. After the police secured Bob and the others, they proceeded to conduct the search of Bob's residence.

On the first floor, police discovered three firearms and firearms-related items, such as cleaning kits. The firearms included a .38 Colt revolver loaded with six rounds lying on the couch; a 12-gauge Remington shotgun with several rounds loaded and one round chambered, leaning against the wall, barrel-end down and stock-end up with the safety set to the off position; an unloaded, unregistered sawed-off shotgun behind a bar out of sight, with shells for the gun sitting nearby. The police also discovered a small amount of marijuana and cocaine, drug paraphernalia such as aluminum foil, plastic baggies, and electronic scales, as well as a radio scanner set to the police frequency. In Bob's coat pocket, police found the keys for all the rooms in the residence. The second floor of the residence contained a separate apartment opened by using the keys found in Bob's coat pocket. There the police discovered five bundles of cash, totaling $5,000, 2.58 grams of heroin, and additional drug paraphernalia such as foil, baggies, latex gloves, and the cover to the scales found downstairs. On both floors, the police found documents that were linked to Bob. In searching Bob himself, the police discovered $671 in cash, a pager, and a cell phone.

During the period while Bob was secured and the search was being conducted, Bob admitted to having previously used cocaine, but he stated that he no longer used drugs. He also stated that the sawed-off shotgun did not have a firing pin and that he kept the Remington shotgun, which belonged to him, "because he needed it for protection because it was a bad neighborhood."

Bob was indicted and convicted on three counts of possession with intent to distribute a controlled substance; three counts of possession of a controlled substance; three counts of using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); three counts of possession of firearms and/or ammunition by a controlled substance user, in violation of 18 U.S.C. § 922(g)(3); and one count for possession of a sawed-off shotgun.

The district court sentenced Bob to ten years' imprisonment on each of the three possession-with-intent-to- distribute counts, all to run concurrently; one year's imprisonment on each of the three possession-of-controlled-substance counts, all to run concurrently; ten years' imprisonment for each of the three § 922(g)(3) counts as well

as for the sawed-off shotgun count, all to run concurrently; five years' imprisonment for the two § 924(c) counts relating to the .38 Colt revolver and the Remington, both to run concurrently; and ten years' imprisonment for the § 924(c) count relating to the sawed-off shotgun, to run consecutive to the other sentences. Bob's total sentence, therefore, was 240 months' imprisonment. In sentencing Bob, the district court enhanced his offense level by four levels under U.S.S.G. § 2K2.1(b)(1)(a) (1997) because the firearms that were possessed in violation of § 922(g) were possessed in connection with another felony offense, and an additional one-level enhancement on the same counts under U.S.S.G. § 2K2.1(b)(1)(b)(5) (1997) because Bob possessed three guns.

On direct appeal of his convictions and sentence, Bob raised three issues: (1) the refusal of the district court to suppress evidence based on violations of the particularity clause of the Fourth Amendment, the knock and announce rule, and *Miranda*; (2) the insufficiency of evidence based on a failure to establish that Bob possessed the drugs or the firearms; and (3) an erroneous sentence enhancement for obstruction of justice. We rejected these arguments and affirmed in an unpublished opinion dated December 29, 1998.

A year later, Bob filed a petition under § 2255, raising four claims: (1) the ineffective assistance of counsel in failing to object to the sufficiency of evidence to satisfy the "use or carry" requirement as interpreted in *Bailey v. United States*, 516 U.S. 137 (1995), for any of the three § 924(c) convictions; (2) the ineffective assistance of counsel based on his failure to object to three counts of § 922(g) because the simultaneous possession of three firearms should only have constituted one offense; (3) the violation of the Double Jeopardy Clause by subjecting him both to three counts of possession with intent to distribute and to three counts of the lesser included offense of possession; and (4) the violation of the right to grand jury indictment because the indictment was not signed by the grand jury foreman. Shortly after filing his petition, Bob filed an "Addendum," which asserted additionally that his sentence was improperly calculated under the Sentencing Guidelines.

In ruling on Bob's § 2255 petition, the district court affirmed the § 924(c) convictions based on the .38 Colt revolver and the Reming-

ton shotgun, but vacated the § 924(c) based on the sawed-off shotgun count. With regard to the Colt-revolver and the Remington-shotgun counts, the court explained that "both weapons were openly displayed in the area where Bob consummated his drug sales and Bob acknowledged that he kept the loaded Remington where it was found for his protection. A rational juror could conclude that Bob openly displayed the Remington and .38 caliber revolver to intimidate his customers." With regard to the sawed-off shotgun, however, the court explained that "[a]t most, the evidence suggested that Bob placed the sawed-off shotgun within the bar so that he could 'grab and use it if necessary.' The Supreme Court has held that the definition of use does not include such 'placement for later active use.'" The court also noted that the government had not proved that Bob "carried" the sawed-off shotgun because "'carry' requires more than the fact that the defendant had, at some time previously, carried the firearm to a particular location." Even though the court vacated the § 924(c) conviction for using or carrying the sawed-off shotgun, it concluded that Bob had not been denied the effective assistance of counsel by his counsel's failure to challenge under *Bailey* the remaining § 924(c) convictions (involving the Colt and Remington firearms).

Without objection from the government, the district court also vacated two of Bob's three § 922(g) convictions as duplicative and found that Bob was denied the effective assistance of counsel for his counsel's failure to raise this issue. Also, without objection from the government, the district court vacated the three convictions for drug possession because they merged into the offenses for possession with intent to distribute. The court rejected Bob's claim that the indictment was not signed by the grand jury foreman.

On the sentencing issues raised in Bob's Addendum, which the court received because it found the Addendum to be timely filed, the court rejected all of Bob's contentions because Bob could not establish cause and prejudice to overcome his failure to raise these issues on direct appeal.

The district court issued an order amending its judgment by vacating: the concurrent one-year sentences of imprisonment for simple drug possession, the consecutive ten-year sentence for the use or carrying of a sawed-off shotgun, and the concurrent ten-year sentence for

possessing a firearm in violation of § 922(g). The court also made corresponding adjustments to the terms of supervised release.

This appeal followed.

II

For his principal argument on appeal, Bob contends that he was denied effective assistance of counsel when counsel failed, on direct appeal, to contend that the government's evidence was insufficient under *Bailey v. United States*, 516 U.S. 137 (1995), to convict him for violations of 18 U.S.C. § 924(c). Section 924(c) punishes using or carrying a firearm "during and in relation to" a drug trafficking crime. In *Bailey*, the Supreme Court held that "use" as written in § 924(c) required proof that the firearm be "actively employed" in the underlying predicate offense. Finding insufficient evidence that merely showed that a defendant possessed a firearm in close proximity to drug trafficking, the Court nonetheless allowed that the "silent but obvious and forceful presence of a gun" was sufficient to prove "use." 516 U.S. at 148.

To prove that he was denied effective assistance of counsel, Bob must establish both that (1) counsel's performance "fell below an objective standard of reasonableness . . . under prevailing professional norms" (performance prong), *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) this deficient performance prejudiced the defense because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice prong), *id.* at 694.

During the government's case against Bob for violation of § 924(c), the government proved (1) that a .38 Colt revolver and a Remington rifle were in the first floor area of Bob's residence; (2) that the Remington shotgun was owned by Bob — indeed, he asserted that he maintained it for "protection"; (3) that both illegal drugs and drug paraphernalia were found on the first floor, which included digital scales and packaging material; (4) that the firearms were found in plain sight and were loaded — indeed, the rifle was placed with its stock up and its barrel-end down; (5) that the radio scanner on the first floor was tuned to the police frequency; (6) that, apart from a

kitchen table, a couple of chairs, and the couch on which the Colt revolver rested, there was no other furniture on the first floor; and (7) that the upstairs contained a locked apartment where more drugs, $5,000, more drug paraphernalia and packaging, and the top of the digital scales were located. The government also presented expert testimony that drug dealers usually maintain a location for selling drugs separate from the location where most of the money and drugs are kept. The government's expert also testified that drug dealers usually try to keep a gun somewhere close to them. Finally, he testified that the presence of packaging materials, digital scales, a radio scanner, and other paraphernalia were indicative of drug distribution, adding that "everything that is needed [for drug distribution] is basically here in front of me," referring to items seized from Bob's residence.

Bob argues that even if this circumstantial evidence shows that drug trafficking occurred, it does not demonstrate that drug transactions took place on the first floor or that, if they did, the firearms were present in open view during these transactions. He contends that "there is no evidence in this case that the guns were openly displayed to anyone — no individual was present in this case during *any* drug transaction."

We agree with Bob that the government presented no *direct* evidence of a transaction on the first floor where the firearms were present. But this does not preclude a jury's consideration of circumstantial evidence. *See United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989). And such evidence must be taken "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The circumstantial evidence in this case would, we conclude, permit a rational jury to find that Bob dealt drugs from the first floor of his apartment and that the purchasers of the drugs were there where the guns were displayed, concededly for Bob's "protection." The government's expert witness indicated that Bob's residence was set up in a manner that indicates it was used for drug dealing. The first floor lacked furniture that one would expect in a living area and contained digital scales and other drug paraphernalia separate from a locked apartment on the second floor where the money was found, indicating that drugs were sold on the first floor. He explained that through this type of arrangement drug dealers are able to keep money secure from

where drugs are sold. It is difficult to conceive that the first floor of Bob's residence was used for anything other than a drug "shooting gallery" in which drugs were sold.

Once we conclude that a reasonable jury could find that the first floor was a drug "shooting gallery" in which drugs were sold, the presence of the firearms could readily be found. Bob himself told the police that he maintained the shotgun for his protection. While he indicated that the protection was necessary because he was in a rough neighborhood, the circumstantial evidence would indicate the protection was also present to protect Bob's drug trafficking operation in his residence. At bottom, we conclude that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.

With this conclusion, we find that Bob cannot satisfy the prejudice prong of the *Strickland* test for the ineffective assistance of counsel, even if he could establish the performance prong. Accordingly, we affirm the district court's conclusion that "[b]oth weapons were openly displayed in the area where Bob consummated his drug sales and Bob acknowledged that he kept the loaded Remington where it was found for his protection. A rational juror could conclude that Bob openly displayed the Remington and .38 caliber revolver to intimidate his customers."

### III

Asserting plain error for the first time on appeal, Bob also contends that his sentence included enhancements for gun possession and use that resulted in impermissible double counting. He argues that under U.S.S.G. § 2K2.4 cmt. n.2 (1997), the district court double counted Bob's weapons possession during sentencing when it enhanced his sentence for his 18 U.S.C. § 922(g)(3) conviction through application of offense-specific characteristics while simultaneously sentencing him for his 18 U.S.C. § 924(c) convictions.

Even if we assume for discussion that the error that Bob claims now for the first time is of constitutional magnitude in order for him to raise it in this appeal from a § 2255 proceeding, *see United States*

*v. Addonizio*, 442 U.S. 178, 186 (1979), we nonetheless reject the argument on its merits.

The Application Notes for U.S.S.G. § 2K2.4 provide:

> Where a sentence under this section [relating to § 924(c) convictions] is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (*e.g.*, § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.

U.S.S.G. § 2K2.4 cmt. n.2 (1997). The flaw in Bob's argument is that his § 922(g) conviction was not the underlying or predicate offense for his § 924(c) conviction. The underlying offense for the § 924(c) conviction was drug trafficking.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.